*In re* MARRIAGE OF HELEN TALTY, Petitioner-Appellee and Cross-Appellant, and WILLIAM F. TALTY, Respondent-Appellant and Cross-Appellee.

Third District   Nos. 3—92—0939, 3—93—0097 cons.

Opinion filed November 22, 1993.—Rehearing denied December 23, 1993.

White, Marsh, Anderson, Howarter, Brusatte & Vickers, of Ottawa (Robert E. White, of counsel), for appellant.

Michael H. Massino, Ltd., of Morris (Michael H. Massino, of counsel), for appellee.

JUSTICE LYTTON delivered the opinion of the court:

This consolidated appeal involves the divorce of petitioner, Helen Talty (Helen), from respondent, William F. Talty (William). Helen and William were married in April 1961. William was employed as a construction worker and part-time farmer until 1975, when he and his brother became owners and operators of an automobile dealership known as "Talty Chevrolet, Cadillac, Buick" located in Morris. Thereafter, William worked at the dealership and also continued working as a part-time farmer.

Helen filed a petition for separate maintenance in Grundy County circuit court in April 1983, which was subsequently amended in February 1984 to a petition for dissolution of marriage. For reasons not clear from the record, a trial was not held on the petition until October 1992. The trial court awarded Helen $750,000 in cash and the condominium in which she lived, subject to the mortgage on the property. William appealed this award and Helen filed a cross-appeal. Helen then petitioned for prospective appellate attorney fees, and the trial court granted her $15,000. William also appeals this award, which was consolidated with the earlier appeal. We affirm the trial court on all issues.

William first argues that the trial court erred in denying his motion for substitution of judge pursuant to section 2—1001(a)(2) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1001(a)(2)). Helen filed her petition for separate maintenance on April 11, 1983. The judge assigned to the case was Judge Robert Wren. William's attorney filed his special and limited appearance along with

a motion for change of venue requesting a substitution of Judge Wren. This motion was never heard and no order was entered on it.

The trial court entered an order awarding temporary maintenance to Helen on June 17, 1983. This order was signed by Judge Richard Wilder, who had apparently been assigned to the case. No order was entered to reflect this change. On February 24, 1984, Helen was granted leave by the court to modify her separate maintenance petition to a petition for dissolution of marriage.

On August 30, 1984, William again moved for a change of venue pursuant to section 2—1001(a)(2) (Ill. Rev. Stat. 1983, ch. 110, par. 2—1001(a)(2)), asking for a substitution of Judge Wilder. Judge Wilder denied this motion and made specific findings on the record as to his lack of prejudice against William.

A litigant's right to a change of venue is absolute where a petition alleging that the presiding judge is prejudiced is presented before trial or hearing begins, and before the judge that is the subject of the petition has ruled on any substantial issue in the cause. (*In re Marriage of Birt* (1987), 157 Ill. App. 3d 363, 366, 510 N.E.2d 559, *appeal denied* (1987), 116 Ill. 2d 556, citing Ill. Rev. Stat. 1985, ch. 110, pars. 2—1001(a)(2), (c).) A change of venue petition based on general allegations of prejudice is untimely if brought after the judge has ruled on a substantial issue. (*In re Marriage of Birt*, 157 Ill. App. 3d at 366.) The policy behind this rule is to preclude a litigant's attempt to "judge shop" after forming an opinion that the judge may be unfavorably disposed toward that litigant's cause. *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 530-31, 463 N.E.2d 719.

William contends that when Helen modified the separate maintenance action to a dissolution of marriage action, he acquired a new unconditional right to a change of venue. Thus, the temporary maintenance order would not be a ruling on a substantial issue.

■ While it is true that an action for divorce is separate from an action for separate maintenance, "they are for the same cause and the relief requested relates to substantially the same state of facts." (*Sidwell v. Sidwell* (1966), 75 Ill. App. 2d 133, 143, 220 N.E.2d 479.) Here, Helen *modified* her petition; the case retained the same docket number and docket sheet. The June 17, 1983, temporary maintenance order continued without adjustment during the pendency of the litigation. Orders are considered substantial when they are directly related to the merits of the case. (*Delta Oil Co. v. Arnold* (1978), 66 Ill. App. 3d 375, 380, 384 N.E.2d 25.) We believe that a temporary maintenance order was a ruling on a substantial issue in the cause and allowed William to form an opinion as to Judge Wilder's disposition in

the cause. The trial court properly decided to deny William's petition for a change of venue.

William next argues that the trial court erred in considering the opinion testimony of Helen's expert witness, William Evenson, concerning his valuation of the automobile dealership. William contends that Evenson's reliance on data from a publication by Robert Morris & Associates was improper because it contains a disclaimer that states:

"(1) That the data should be considered only as a general guideline and not as absolute industry norms; (2) the data may not be fully representative of a given industry; (3) the financial statements that are used in compiling the data are not selected by any random or statistically reliable method; (4) some of the industry samples are rather small in a relationship the [sic] total number of firms in a given industry and hence the small sample can increase the chance that some composites do not fully represent the industry; (5) there is a chance that an extreme statement may be present in the data that could result in a disproportionate influence on the industry composite."

A trial court has broad discretion in determining whether a witness has been qualified to testify as an expert. (In re Marriage of Hunter (1992), 223 Ill. App. 3d 947, 954, 585 N.E.2d 1264, appeal denied (1992), 145 Ill. 2d 634.) A party seeking to have a witness qualified as an expert must lay a proper foundation showing that the expert has some special knowledge or experience in the area about which the expert intends to express his or her opinion. (In re Marriage of Hunter, 223 Ill. App. 3d at 954.) An expert witness' opinion may not be based on mere conjecture or speculation. (Dyback v. Weber (1986), 114 Ill. 2d 232, 244, 500 N.E.2d 8.) Additionally, if the data upon which the expert relies contains substantial unreliability or inaccuracy, it may be stricken. (Lowe v. Norfolk & Western Ry. Co. (1984), 124 Ill. App. 3d 80, 114, 463 N.E.2d 792.) However, if the trial court finds that a witness is qualified to testify as an expert, this decision will not be disturbed absent an abuse of discretion. Black v. Iovino (1991), 219 Ill. App. 3d 378, 388, 580 N.E.2d 139.

In this instant case, William's attack on Evenson's valuation is centered on the alleged unreliability or inaccuracy of the data utilized by Evenson in the Robert Morris & Associates publication. The Robert Morris publication accumulates financial data provided by American businesses and presents this data in a statistical breakdown according to asset size of the business. The publication has a data sheet devoted exclusively to automobile retailers. Evenson testified

that the data that he utilized were accumulated from between 1,500 and 2,000 automobile retailers and that, in his opinion, the data were adequately reliable to be used in his valuation calculations.

■ We believe that the trial court did not abuse its discretion in allowing Evenson's testimony; any deficiency in the Robert Morris data goes to the weight of Evenson's testimony, not to the admissibility. See *Illinois State Toll Highway Authority v. Humphrey Estate* (1978), 62 Ill. App. 3d 316, 326, 379 N.E.2d 626.

Further, Evenson did not base his opinion exclusively on the Robert Morris data. Both Evenson and Carl Woodward, William's expert witness, utilized essentially the same method of valuing Talty Chevrolet, the capitalized earnings method. Both opinions used the Talty Chevrolet income tax returns to determine the adjusted gross income of the business, which was divided by a rate of return to determine the value of the asset. The experts' opinions differed substantially on two figures, the rate of return and the proper figure for management compensation. In light of the evidence presented, we find that the trial court did not abuse its discretion and properly allowed Evenson's testimony to be admitted.

William also asserts that the trial court duplicatively considered the goodwill of Talty Chevrolet, because, under the statute, future earnings are already considered by the court in fashioning an award of maintenance or distribution of property. Goodwill has been defined as "the ability to [generate] future income." (*In re Marriage of Zells* (1991), 143 Ill. 2d 251, 254, 572 N.E.2d 944.) This court has found that the consideration of goodwill in the valuation of a professional business in addition to a party's ability to generate future income results in an impermissible duplicative valuing of goodwill. (*In re Marriage of Courtright* (1987), 155 Ill. App. 3d 55, 58-59, 507 N.E.2d 891.) Under the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 101 *et seq.*), a trial court is required to consider certain factors in apportioning marital assets. The pertinent factors include:

> " '[T]he relevant economic circumstances of each spouse when the division of property is to become effective[,] \*\*\* [the] occupation, amount and sources of income, vocational skills [and] employability \*\*\* of each of the parties \*\*\* [and] the reasonable opportunity of each spouse for future acquisition of capital assets and income.' " *In re Marriage of Zells*, 143 Ill. 2d at 255, quoting Ill. Rev. Stat. 1989, ch. 40, pars. 503(d)(4), (d)(7), (d)(10).

In the instant case, the valuation of the dealership included goodwill. During the court's ruling from the bench, the court made specific comments regarding the enumerated statutory considerations of section 503(d) (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)). Referring to section 503(d)(7), the court stated, "[o]bviously, with Mr. Talty, if things continue as they have, he should have a great income potential as we have all heard." Under section 503(d)(10), the court stated, "[a]nd, of course, Mr. Talty, if his business continues as it has, will be quite a wealthy man." It is these statements which William identifies as being duplicative valuations of the dealership's goodwill.

Illinois courts have uniformly found that goodwill, when applied to a professional business, is not a divisible marital asset. (*In re Marriage of Zells* (1991), 143 Ill. 2d 251, 572 N.E.2d 944 (lawyer); *In re Marriage of Courtright* (1987), 155 Ill. App. 3d 55, 507 N.E.2d 891 (doctor); *In re Marriage of White* (1986), 151 Ill. App. 3d 778, 502 N.E.2d 1084, *appeal denied* (1987), 114 Ill. 2d 538 (dentist); *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447 (optometrist).) Goodwill in these situations is not divisible because it is the sole asset of the professional.

In the instant case, a distinction must be made between professional goodwill and the goodwill of a car dealership business. In a professional business situation, goodwill exists solely because professional people have skills that enable them to generate income. It is the skill, expertise and reputation of the individual that maintain the business, not the goods that they sell or the product name that may be printed on them. In an automobile dealership, the goodwill belongs to the business itself. We do not doubt that some of Talty Chevrolet's customers come to the dealership because of William. Yet a review of the record shows that the dealership is a substantial, autonomous, ongoing business. If William sold his interest in the business, the dealership would continue to function as an independent business entity, not as the handmaiden of William's expertise in car sales.

■ Thus, the trial court correctly considered sections 503(d)(7) and (d)(10) of the Act in its valuation of the dealership. The court did not value the business' goodwill twice. Rather, it fashioned an equitable distribution of the marital assets, properly considering both William's ability to sustain his standard of living and his ability to acquire future assets through continued association with the dealership. We believe that the concerns of duplicative valuation as addressed in *Zells* are unique to situations involving *professional* goodwill. See *In re Marriage of Perino* (1991), 224 Ill. App. 3d 605, 609, 587 N.E.2d 54.

In passing, we note that a recent case, *In re Marriage of Brenner* (1992), 235 Ill. App. 3d 840, 601 N.E.2d 1270, relying on *Zells*, reached a different conclusion. It does not appear that the court in *Brenner* was presented with arguments that required it to differentiate between the goodwill of a professional corporation and a close corporation. The *Brenner* court simply assumes the reasoning in *Zells* applies to both. To this extent, *Brenner* does not affect our analysis. *Zells* quite clearly refers to professional businesses and distinguishes them from other businesses. *Zells*, 143 Ill. 2d at 255-56, quoting *In re Marriage of Courtright* (1987), 155 Ill. App. 3d 55, 58-59, 507 N.E.2d 891.

William next argues that because Helen did not contribute to the marital assets in the nine years between their separation and the dissolution, the trial court erred in failing to consider William's efforts in contributing to the marital assets. At the time of the parties' separation, William had not accumulated any substantial assets. On the contrary, he owed a significant amount of money on two notes executed for the purchase of the dealership.

It is well established that the proper date of valuation of a party's business for purposes of distribution of marital assets is the date of dissolution. (*In re Marriage of Morrical* (1991), 216 Ill. App. 3d 643, 645, 576 N.E.2d 465.) A trial court's distribution of the marital property will not be disturbed on appeal absent an abuse of discretion, that is, when no reasonable person would take the view adopted by the court. (*In re Marriage of Agazim* (1988), 176 Ill. App. 3d 225, 230, 530 N.E.2d 1110.) The controlling inquiry in apportionment of marital property is whether the distribution is equitable in nature; it is not required to have mathematical equality in the distribution, and just proportions do not mean equal amounts. *In re Marriage of Agazim*, 176 Ill. App. 3d at 231.

■ The trial court did not abuse its discretion in the distribution of the marital assets. The court properly valued the business property at the date of dissolution. Although the distribution was not equal, it was equitable. Helen contributed her domestic services and raised three children during the lean years. Now that William's business is successful, Helen should properly share assets that he has accumulated.

Finally, William argues that the trial court erred in its valuation of certain farming equipment by accepting Helen's valuation of the equipment at $141,000, the figure shown on his 1990 individual income tax return. The $141,000 is the cost, or basis, of the farm equipment when initially purchased and is not the present value. William

asserts that the proper value for the equipment is the depreciated value of the equipment, $5,559.

■ The trial court never gave a specific value for the farm equipment. In its ruling, it made the following statement:

> "Now, as to the assets in this case, there are about 2 million dollars in assets that I have to consider. According to the plaintiff, before taxes it was like $1,988,219—I mean according to the husband. According to the wife the total assets are $2,161,347. So we have got roughly 2 million dollars in assets to consider here."

It is unclear what value the trial court may have placed on the farm equipment. Because the value of William's assets used by the court, $2 million, is only $11,781 more than the asset value advanced by William, it is doubtful that the court used the farm equipment value advanced by Helen. William has failed to sustain his burden in showing that the trial court abused its discretion in valuing the farm equipment. See *In re Marriage of Morrical* (1991), 216 Ill. App. 3d 643, 645, 576 N.E.2d 465.

■ Helen filed a cross-appeal in this matter contesting the equitable distribution of the marital assets. Because we have already determined that the trial court's distribution of the marital assets was equitable, we find it unnecessary to address Helen's cross-appeal.

We turn next to William's consolidated appeal, No. 3—93—0097, challenging a $15,000 award to Helen for prospective attorney fees for defense of the appeal. William relies solely on the case of *In re Marriage of Wentink* (1984), 132 Ill. App. 3d 71, 476 N.E.2d 1109. In *Wentink*, a trial court's order requiring payment of prospective appellate attorney fees to defend the appeal was found to be improper because a cross-appeal was taken by the appellee. (*In re Marriage of Wentink*, 132 Ill. App. 3d at 81.) The court strictly construed section 508(a)(3) of the Act, reasoning that appellate attorney fees may only be awarded for the *defense* of an appeal, and the appellee's cross-appeal was an *offensive* action for which the statute does not allow prospective fees.

■ In this case, a hearing was held on the petition for prospective fees after the cross-appeal had been filed. The award of attorney fees was specifically designated for the defense of the appeal and *not* for the cross-appeal. Helen's lawyer testified concerning the projected time to be spent solely in the preparation of the defense of the appeal. The trial court awarded him the $15,000 as the equivalent of a "retainer fee," only for the defense of the appeal. Thus, the trial

court's award of appellate attorney fees complied with the requirements of section 508(a)(3) of the Act.

The judgment of the circuit court of Grundy County is affirmed.

Affirmed.

BARRY and BRESLIN, JJ., concur.