(No. 76770.

*In re* MARRIAGE OF HELEN J. TALTY, Appellee,
and WILLIAM F. TALTY, Appellant.

*Opinion filed June 22, 1995.*

HARRISON, J., joined by McMORROW, J., dissenting.

White, Marsh, Anderson, Brusatte, Vickers & Deobler (Robert E. White, of counsel), and Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C. (Michael T. Reagan, of counsel), all of Ottawa, for appellant.

Michael H. Massino, Ltd., of Morris, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The petitioner, Helen J. Talty, brought the present action in the circuit court of Grundy County seeking the dissolution of her marriage to the respondent, William F. Talty. The circuit court entered a decree dissolving the marriage and disposing of the parties' property. The court awarded Helen a lump sum of $750,000 and the condominium where she was living. The court assigned the couple's remaining assets to William. No award of maintenance was made. In a post-decree order, Helen was awarded $15,000 in prospective attorney fees for the defense of the present appeal. The appellate court affirmed the judgment. (252 Ill. App. 3d 80.) We allowed William's petition for leave to appeal (145 Ill. 2d R.

315(a)); and we now reverse the judgments of the courts below and remand the matter to the circuit court for further proceedings.

The parties were married in 1961 and had three children, all of whom were emancipated by the time the order of dissolution was entered. Helen Talty filed a petition for separate maintenance in April 1983. In February 1984, Helen amended the action to one for dissolution of the marriage. Before the separation, Helen worked in the home; after the separation, Helen was employed as a pharmacy technician at a drug store in Coal City. At the time of the dissolution, Helen was earning $4.50 an hour and was working about 38 hours per week.

William and his brother were co-owners of Talty Chevrolet, Cadillac, Buick, Inc., an automobile dealership located in Morris. William became a partner in the business in 1975, a year after his brother acquired it; William had other employment before that time. William has also farmed throughout his life, and, at the time of the dissolution, he was farming about 460 acres in partnership with his brother.

During the separation, William made monthly payments of maintenance to Helen. These payments were originally about $950 a month, and they were later increased to about $1,450 a month. In addition, William provided Helen with the use of a new automobile. In 1989, William was ordered to furnish Helen with $20,000 for the purchase of a condominium apartment.

After a lengthy period of inaction by the parties, the matter proceeded to trial in October 1992. The principal issue at trial centered on the valuation of the car dealership that William owned and operated in conjunction with his brother. Helen's expert witness, William Evenson, a lawyer and accountant, testified that the fair market value of the business was $1,375,000, making Wil-

liam's half interest worth $687,500. William's expert witness, Carl Woodward, an accountant, testified that the value of the business was approximately $800,000, and that William's share was therefore worth about $400,000. Woodward's figures were net of taxes that would be owed on a sale of the business; Woodward's pre-tax valuation of the dealership was $1,053,000. Both experts included goodwill in their calculations. The parties agree that William's interest in the car dealership, acquired by him in 1975, is marital property.

For a number of years preceding the 1992 dissolution order, William earned between $200,000 and $300,000 in annual salary and bonus from his position at the car dealership, where he was vice president and sales manager. At the time of trial, William had several bank accounts and certificates of deposit worth more than $700,000. Including the bank accounts, the farm land, and William's half interest in the car dealership, the total value of the marital estate was estimated to be about $2 million.

After the close of evidence, the court entered an order dissolving the marriage and dividing the marital assets. The court awarded Helen a lump sum of $750,000 in cash and the condominium apartment where she was then living, subject to the existing mortgage. The court assigned to William the couple's remaining marital assets. In view of the substantial cash award made to Helen, the court did not grant maintenance. Both parties filed notices of appeal from the circuit court judgment.

In a post-decree petition, Helen later requested an award of prospective attorney fees to defend against William's appeal. The judge who heard the case had retired in the interim, and Helen's request was heard by a different judge. Following a hearing, the second judge awarded Helen $15,000 in prospective attorney fees for the defense of the appeal.

The appellate court affirmed the circuit court judgment. (252 Ill. App. 3d 80.) Regarding the issues raised before this court, the appellate court rejected William's challenges to the trial court's treatment of the goodwill of the car dealership, the award to Helen of prospective attorney fees for the defense of the appeal, and the denial of a motion for automatic substitution of judge. The appellate court also upheld the trial judge's division of the marital estate, which both William and Helen challenged on appeal. Finally, the appellate court rejected William's objections to the opinion testimony of Helen's expert witness and to the trial court's valuation of certain farm equipment. We allowed William's petition for leave to appeal (145 Ill. 2d R. 315(a)).

William's principal contention in the present appeal involves the treatment of the goodwill in the business he operated with his brother. As we have stated, the valuations offered by the parties' expert witnesses included amounts representing the goodwill of the business. Relying on *In re Marriage of Zells* (1991), 143 Ill. 2d 251, William argues that the trial judge improperly considered goodwill in valuing the business. William believes that the trial judge's treatment of goodwill in this case resulted in an impermissible double counting of its value—first when it was considered as part of the value of the business, and again later in the division of the marital assets, when the judge assessed the circumstances of the parties, particularly William's superior earnings capacity. The effect of the asserted error would be to overstate the value of the property assigned to William. In response, Helen asserts that the appellate court correctly concluded that *Zells* is limited to professional practices and professional corporations and thus is inapplicable to the car dealership at issue here.

In *In re Marriage of Zells* (1991), 143 Ill. 2d 251, this court considered the appropriate treatment of the

goodwill of a professional practice in a division of property under the Illinois Marriage and Dissolution of Marriage Act. *Zells* noted the conflicting appellate court decisions on the question whether the goodwill of a professional corporation should be considered a marital asset. The court agreed with the cases that have held that goodwill is already reflected in a number of the circumstances that must be considered by a judge in making an equitable division of property under the Act. *Zells* concluded:

> "Adequate attention to the relevant factors in the Dissolution Act results in an appropriate consideration of professional goodwill as an aspect of income potential. The goodwill value is then reflected in the maintenance and support awards. Any additional consideration of goodwill value is duplicative and improper." *Zells*, 143 Ill. 2d at 256.

We believe that the same concerns noted in *Zells* are present here. The Illinois Marriage and Dissolution of Marriage Act embodies a partnership theory of marriage. This court has previously described the general purpose of the scheme of property division set forth in the Act and the goals those provisions are designed to achieve:

> "The primary legislative objective is to create a system of property division upon dissolution of marriage that is more equitable than that which previously existed in this State. It is evident that the legislature recognized glaring inequities in the earlier law and favored change. For instance, by giving both spouses an interest in 'marital property' upon dissolution of marriage,. the legislature sought to award economic credit in the distribution of property for indirect or domestic contributions to the accumulation of property and sought to replace the concept of post-marital support through alimony with one of post-marital stability through a just distribution of marital property and assets." *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 576.

In furtherance of those goals, section 503(d) of the

Act directs the trial judge to "divide the marital property without regard to marital misconduct in just proportions." (Ill. Rev. Stat. 1991, ch. 40, par. 503(d).) In doing so, the court is to consider "all relevant factors," including:

> "(4) the relevant economic circumstances of each spouse when the division of property is to become effective ***;
>
> * * *
>
> (7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;
>
> * * *
>
> (10) the reasonable opportunity of each spouse for future acquisition of capital assets and income." Ill. Rev. Stat. 1991, ch. 40, pars. 503(d)(4), (d)(7), (d)(10).

As required by statute, the trial judge in the present case considered the various circumstances listed in section 503(d) in dividing the couple's marital estate. In essence, William contends that these circumstances overlap to some degree the elements that underlie the valuation of the personal goodwill of the car dealership. We agree with William that the judge's consideration of these matters might have caused the judge to duplicate some of the elements already considered in placing a value on the car dealership, including its goodwill.

"A workable definition of goodwill is that 'goodwill is the value of a business or practice that exceeds the combined value of the physical assets.' (2 Valuation and Distribution of Marital Property, sec. 23.04[1] (M. Bender ed. 1984).)" (*In re Marriage of White* (1986), 151 Ill. App. 3d 778, 780.) "Goodwill represents merely the ability to acquire future income." (*Zells*, 143 Ill. 2d at 254.) To the extent that the goodwill of the car dealership depends on William's personal efforts, the same elements that underlie that calculation were also considered by the court in its assessment of the criteria contained in section 503(d). (*Zells*, 143 Ill. 2d at 254-56; *In re Marriage of Courtright* (1987), 155 Ill. App. 3d 55,

58-59; *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 346-48; see generally Note, *Family Law—Division of Property Upon Marital Dissolution—The Illinois Appellate Court Grapples with Goodwill in a Professional Practice—Is it Property or Just Another Factor?*, 1985 S. Ill. U. L.J. 285.) We agree with William that the present case must be remanded to the circuit court for further consideration of this issue. Thus, although the present case does not involve a professional practice, the same concerns that motivated our decision in *Zells* are present here. (See *In re Marriage of Brenner* (1992), 235 Ill. App. 3d 840, 847 (valuation of woodworking business); see also *In re Marriage of Suarez* (1986), 148 Ill. App. 3d 849, 865-67 (valuation of business that sells and repairs diesel radiators and filters for locomotives).) We agree with William that the cause must be remanded to the circuit court for further consideration of this issue.

This is not to say that the entire amount of goodwill of the Talty dealership will be personal in nature and hence attributable wholly to the efforts of William and his brother. *Zells* involved a professional practice, whose goodwill is generally personal in nature, and we were not called upon in that case to distinguish between personal goodwill and enterprise goodwill. Such a distinction may be appropriate here, however, if on remand the court determines that the goodwill of the business comprises a combination of personal and enterprise goodwill. See Kalcheim & Plante, *Professional Goodwill in Divorce After Zells*, 79 Ill. B.J. 624, 624-25 (1991).

Thus, the evidence may disclose that some portion of the goodwill attributable to the dealership will be based not on the brothers' personal efforts, but on the intangible value of the enterprise, including the products it sells. Our concern over duplication of the criteria contained in section 503(d) is, of course, limited to

personal goodwill—that attributable to William—and not with that of the enterprise. To the extent that goodwill inheres in the business, existing independently of William's personal efforts, and will outlast his involvement with the enterprise, it should be considered an asset of the business, and hence of the marriage. In contrast, to the extent that goodwill of the business is personal to William, depends on his efforts, and will cease when his involvement with the dealership ends, it should not be considered property. The same elements that constitute personal goodwill are considered under section 503(d) in the division of the parties' marital property.

William next argues that the award to Helen of prospective attorney fees of $15,000 for the defense of the present appeal was erroneous because Helen was prosecuting a cross-appeal from the circuit court judgment. Alternatively, William contends that the correct procedure for awarding appellate counsel's fees is to make the award in the circuit court after the conclusion of the appeal.

Section 508(a) expressly authorizes a circuit court to make a prospective award of attorney fees to a party for the defense of an appeal. That section provides:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred by any party, which award shall be made in connection with the following:

* * *

(3) The defense of an appeal of any order or judgment under this Act ***." Ill. Rev. Stat. 1991, ch. 40, par. 508(a).

William first argues that an award of prospective attorney fees was not appropriate in this case because

Helen herself had filed a cross-appeal from the circuit court judgment. William maintains that a prospective award of fees is not permitted when the party requesting the award is also pursuing an appeal from the same underlying judgment.

While we agree with William that the statutory provision at issue here, section 508(a)(3), speaks only of awards of fees for the defense of an appeal, we do not believe that the award made here runs afoul of the statute. In presenting Helen's request for an award of prospective fees, Helen's attorney distinguished the time he would spend in responding to William's appeal from the time he would spend in prosecuting Helen's cross-appeal. In granting Helen's request for the prospective award and in later denying William's motion to vacate the order, the judge emphasized that the fee was being awarded only for counsel's work in the defense of the appeal and not for counsel's separate efforts challenging the circuit court judgment. Notably, the court in *In re Marriage of Wentink* (1984), 132 Ill. App. 3d 71, 81, on which William relies for the proposition that prospective fees for the defense of an appeal may not be awarded to a party who has also filed a cross-appeal, did not consider whether counsel's work on the appeal in that case was divisible. (*Cf. In re Marriage of Pick* (1988), 167 Ill. App. 3d 294, 305 (rejecting *Wentink* and concluding that fees may be awarded for successful prosecution of appeal).) Helen's lawyer requested fees for only that portion of the work that would be involved in defending the appeal, and the court sought to limit the award to that amount. We find no error in the trial court's award in the present case.

William further contends that the correct procedure in awarding appellate fees is for the circuit court to make the award after the appeal has been resolved, citing *In re Marriage of Divarco* (1988), 167 Ill. App. 3d

1014, 1022. We note, however, that *Divarco* was a decision under prior law. Effective January 1, 1988, language was added to section 508(a) of the Act to expressly authorize the circuit court to enter an award for "the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred." (Pub. Act 85—357, §1, eff. January 1, 1988.) Prior to the amendment, the districts of the appellate court were divided on the question whether the Act permitted prospective awards of attorney fees, including fees for the defense of an appeal. (See *In re Marriage of Pagano* (1992), 154 Ill. 2d 174, 188; *In re Marriage of Brent* (1994), 263 Ill. App. 3d 916, 927-28.) With that amendment, the legislature has now made clear that prospective fees may be awarded under the Act. *Pagano*, 154 Ill. 2d at 188.

To be sure, a prospective award of fees should be made only upon a record adequate to support the award. (*In re Marriage of Pittman* (1991), 213 Ill. App. 3d 60, 63.) In the present case, it is clear that Helen lacked sufficient resources to bear the cost of her attorney fees during the appeal and that William had the means to pay the fees of both his own attorney and opposing counsel. William does not challenge the amount of the fee awarded. We find no abuse of discretion in the trial court's decision to award a prospective fee.

As a final matter, William argues that the trial court erred in failing to allow his motion for automatic substitution of judge pursuant to section 2—1001(a)(2) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1001(a)(2)). Because we have concluded that the cause must be remanded to the circuit court for a new trial, and because it appears from the record that the judge whom William unsuccessfully attempted to remove from the case has since retired, we need not address this additional argument.

For the reasons stated, the judgments of the appellate and circuit courts are reversed, and the cause is remanded to the circuit court of Grundy County for further proceedings.

*Reversed and remanded.*

JUSTICE HARRISON, dissenting:

Mr. Talty should not be granted a new trial regarding division of the marital estate. Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)) requires the trial court to divide marital property in "just proportions." The trial court has broad discretion in determining what apportionment is equitable under this standard, and its judgment will not be disturbed absent an abuse of discretion. An abuse of discretion will be found only when no reasonable person could take the view adopted by the trial court. (See *In re Marriage of Morris* (1994), 266 Ill. App. 3d 277, 281.) This is not such a case.

In assailing the trial court's judgment, Mr. Talty relies on certain comments made by the circuit judge when explaining his decision. According to Talty, the judge's comments indicate that he may have considered the element of goodwill twice, resulting in an erroneous overvaluation of Talty's automobile dealership. Such a claim is manifestly incorrect. The trial court's valuation of the business was based on the testimony of the parties' expert witnesses. That testimony did include an amount for goodwill, but there was no duplication in the expert's calculations, and the trial court added nothing to the experts' figures.

The remarks cited by Talty pertain to distribution of the marital assets, not their valuation. Rather than establishing error, those remarks indicate that the trial judge understood the relevant statutory factors and applied them correctly. In any case, it is the trial court's ultimate conclusion and not his rationale that is dis-

positive. A trial judge's explanation for his decision is not what determines whether a judgment should be set aside on review. A reviewing court is not bound to accept the reasons given by the trial court for its judgment. (*People ex rel. Waller v. 1990 Ford Bronco* (1994), 158 Ill. 2d 460, 463.) To the contrary, the reasons given by a trial judge for an order, or the findings on which an order is based, are not material if the order is correct. (See *Board of Managers of Dominion Plaza One Condominium Association No. 1-A v. Chase Manhattan Bank, N.A.* (1983), 116 Ill. App. 3d 690, 694.) If there is any basis in the record to support the judgment of the trial judge sitting without a jury, that judgment should be affirmed. See *Cronin v. McCarthy* (1994), 264 Ill. App. 3d 514, 523-24.

The majority opinion outlines the financial circumstances of the parties at the time of trial. As its discussion shows, the marital estate was worth approximately $2 million. Talty had a partnership interest in a major farming operation and retained ownership of a car dealership that promised to make him richer than he already was. By contrast, after more than 30 years of marriage, Helen was left with a condominium apartment, a modest job that barely paid a living wage, no prospects, and no maintenance. Based on this record, there is abundant support for an award of $750,000 to Helen after taking into account the factors enumerated in section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)). To send the case back for further consideration based on Talty's claim that he was, in effect, overcharged, defies understanding. The circuit court did not abuse its discretion, and its judgment should be affirmed.

In reaching a contrary conclusion, the majority relies on *In re Marriage of Zells* (1991), 143 Ill. 2d 251, but that case is inapposite. In *Zells*, our court correctly

recognized that the goodwill value of a law practice cannot be considered both as a marital asset subject to division and as an aspect of income potential for the purposes of establishing maintenance and support awards. Because goodwill is nothing more than the ability to acquire future income, taking it into account for both purposes would result in an improper duplication of the same factor in both calculations. A spouse would receive a greater amount of assets as well as a larger award of maintenance, when she should receive only one or the other.

To eliminate the possibility of such overpayments in the context of professional businesses, this court did not prohibit the consideration of goodwill. In *Zells*, 143 Ill. 2d 251, it merely specified that the element of goodwill should be reflected in the maintenance and support awards, rather than in valuation of the marital assets subject to division.

The situation before us here is distinguishable. Talty owned a car dealership, not a professional business. Unlike a legal or medical practice, the goodwill of a dealership is not solely dependant on the owner's professional skills. Dealerships, as most corporate commercial enterprises, exist independently of their owners and continue to function as new owners come and go. Except in exceptional circumstances, which the record does not show to exist here, the goodwill will be attributable to the enterprise, not the personality who happens to own it. The goodwill is therefore properly included in the value of the enterprise when determining how marital assets should be distributed.

A second, and more fundamental distinction from *Zells*, 143 Ill. 2d 251, is that in this case there was no possibility of a duplicate enhancement of the property distribution and maintenance awards. The reason is simple. Unlike *Zells,* there was no maintenance award.

All Helen received was a property distribution. When only a distribution of marital assets is involved, valuation of the business is the only place where goodwill can be considered. The trial court therefore did not err when it refused to deduct that element from its appraisal of the dealership's value.

What really concerns my colleagues is an issue not involved in *Zells* at all, namely, how a trial judge should handle the interplay between the various factors enumerated in section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)) where, as here, an amount for goodwill is included in the value of the marital assets subject to division. The majority asserts that the value of goodwill must be subtracted from the value of the assets, at least to the extent that such goodwill is personal to Talty, because the elements that comprise the goodwill overlap some of the other considerations enumerated in section 503(d), such as the "amount and sources of income" of each of the parties (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)(7)) and "the reasonable opportunity of each spouse for future acquisition of capital assets and income" (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)(10)).

The flaw in the majority's argument is that it fails to see that there is always going to be overlap between the value of a couple's assets and these other factors, whether the asset value is derived from goodwill or not. Whatever the type of assets a couple may have, be it real estate holdings, bank accounts, shares of stock, or something else, and by whatever means those assets may have appreciated, their value will affect the couple's income and opportunity for future income and acquisition of additional capital. This is so whether the value comes from professional skill, hard labor, business acumen, or dumb luck in the lottery. The more resources a person has, the more he is likely to be able to acquire.

The fewer assets he has, the less promising his financial prospects.

These are not profound insights. They are simple truisms which the General Assembly was trying to express when it established the guidelines for the disposition of marital property under section 503(d). The guidelines reflect economic reality and were designed to give trial courts broad discretion in fashioning arrangements that deal with that reality in an equitable fashion. There is nothing unfair or unjust in this. To the contrary, the General Assembly's approach is as reasonable as it is practical. The construction placed on the law by the majority today is neither. In my view, it draws distinctions that are meaningless and that will be impossible for the circuit courts to apply. I therefore dissent.

JUSTICE McMORROW joins in this dissent.