SECOND DIVISION

September 30, 2003

No. 1-02-1363

THOMAS PETTY, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )               

)

CHRYSLER CORPORATION, a foreign ) 

Corporation, now known as )

DAIMLERCHRYSLER MOTORS COMPANY, LLC and )

NORTH SHORE DODGE, INC., d/b/a ) 

GREGORY DODGE, INC., an Illinois   ) 

corporation, ) Honorable

) Allen S. Goldberg,

Defendants-Appellees. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court: 

Plaintiff Thomas Petty brought this action against defendants Chrysler Corporation (Chrysler) and his former employer North Shore Dodge, Incorporated, also known as Gregory Dodge (Gregory Dodge), based on statutory fraud under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) and common law misappropriation of identity.  

The dispute arose when Petty's name appeared in a mass mailing conducted by Chrysler to promote Gregory Dodge after Petty stopped working at that dealership.  Plaintiff appeals the circuit court's order granting summary judgment to defendants.  We affirm in part and reverse and remand in part.

FACTS

Petty worked as a sales manager for defendant Gregory Dodge, an authorized Chrysler dealership, during 1993 and 1994.  On March 31, 1994, Petty resigned his position at Gregory Dodge and immediately began working for Dodge of Glenview.  Both Gregory Dodge and Dodge of Glenview are in Chrysler's Chicago Metropolitan Sales Locality.

Defendant Chrysler, an automobile manufacturer, established a marketing program called "Customer One Ownership Loyalty Program" ("Customer One") to increase repeat business from previous purchasers.  To participate in the program, a dealership paid a fee for each car it sold and, in return, Chrysler sent the purchasing customer newsletters and quarterly magazines promoting the dealership.  Each dealership selected a representative, whose name appeared as a computer-generated signature on the mailings along with the dealership's information.  A dealership could change its designated representative by indicating the change on a quarterly form or by calling a toll-free number.  In May 1993, Gregory Dodge submitted its quarterly "Customer One" form to Chrysler listing Petty as the dealership's representative.  Chrysler distributed the first issue of the "Customer One" magazine in October 1994.

In October 1994, Lother Siegel, one of Petty's former customers from Gregory Dodge, showed Petty the "Customer One" magazine and cover letter Siegel had received.  The cover letter was signed "Thom Petty" and promoted Gregory Dodge's customer service.  Petty notified Chrysler's District Sales Manager Ronald Fries that Petty's name should not have appeared on the Gregory Dodge mailings because he no longer worked there.  That same day, Fries called the toll-free "Customer One" number and removed Petty's name from the database before the next quarterly mailing.

Petty contends he never authorized Gregory Dodge to use his name in the "Customer One" mailings.  In a deposition, Petty testified he told Fries on his first day of work at Dodge of Glenview that he no longer worked for Gregory Dodge.  That same day, Petty also notified George Oswald that he switched dealerships.  Oswald was the Chrysler Field Operations manager in charge of the district sales and service managers in the Chicago area.  

Petty testified in a deposition that he was shocked and upset when he discovered his name was used in the "Customer One" mailings for Gregory Dodge.  He stated he lost two or three nights' sleep and his reputation was damaged, especially among his coworkers at Dodge of Glenview who teased him about being "in cahoots" with a competitor.

Petty filed a series of amended complaints against Chrysler and Gregory Dodge alleging violations of the Consumer Fraud Act and common law misappropriation of identity for using his name without his consent.

In Chrysler's answer to Petty's complaint, it denied knowing Petty became sales manager for Dodge of Glenview or that his name was appearing in the "Customer One" magazine for Gregory Dodge.

Shahan Alexanian, a Gregory Dodge employee, signed the "Customer One" form listing Petty as the "acting principal dealer" for the dealership.  Alexanian stated in an affidavit that Petty had directed him to use his name on the form.  However, in a subsequent deposition, Alexanian admitted Petty never told him to use his name for the "Customer One" program.

In Petty's second amended complaint, he contended Chrysler and Gregory Dodge diluted his goodwill and caused him to lose potential commission income (Counts I & II).  In addition, Petty sought attorney fees (Count III) and punitive damages (Count IV) for the alleged violation of the Consumer Fraud Act.  In Count V and VI, Petty claimed common law misappropriation of his identity and punitive damages for the misappropriation.  In total, Petty requested the court award him $3 million or 10% of the defendants' net worth, attorney fees, and costs.

Chrysler filed a motion for summary judgment on all counts, which Gregory Dodge joined, contending Petty failed to produce any evidence to support his claims for damages for dilution of goodwill or lost income.  In Petty's response to the motion, he contended Gregory Dodge's financial reports contained sufficient evidence to support his claims.  The reports indicated Gregory Dodge earned $9,881 in gross profits in the "Customer Labor-Mechanical" account in August 1994.  In September 1994, the month Chrysler published the "Customer One" letters, the gross profits in that account increased to $14,717 and remained above the August level for the rest of that year.  Gregory Dodge also sold more used cars in September than in August.

The trial court granted the defendants' motion for summary judgment on Counts I through IV.  The court found Petty failed to offer any evidence presenting a factual issue on damages and said Petty's evidence did not indicate a connection between profits and the mailings.  The court stated, "[Petty's] selective use of sales figures is misleading in that new car sales dropped beginning September 1994 and profits for the mechanical department as a whole show no pattern after September of 1994."

The court subsequently held a pretrial conference to hear the parties' arguments on damages for the remaining misappropriation counts.  Petty's attorney argued Petty adequately pleaded damages, because nominal damages are presumed in misappropriation cases.  Petty's attorney also argued the court should not limit Petty to recovering nominal damages on the remaining counts for misappropriation of Petty's name.  He attempted to persuade the court that damages for economic loss, mental suffering, personal humiliation, and impairment of reputation should also be presumed.  The court disagreed, but allowed Petty to amend Counts V and VI of his complaint to allege special damages.

Petty subsequently amended Counts V and VI to include special damages for mental suffering and damage to his reputation.  Petty also repleaded Counts I, III, and IV as they appeared in the second amended complaint.  In addition, Petty pleaded new versions of Counts I, III, and IV, alleging the same special damages as Count V.

Chrysler and Gregory Dodge filed a hybrid motion asking the court to dismiss the remaining counts or grant them summary judgment.  Defendants contended Petty failed to sufficiently plead special damages in Count V and punitive damages under Count VI were not available in the absence of actual damages.  The only evidence of Petty's special damages was his deposition testimony, which did not include any specific facts to establish his alleged mental suffering or harm to his reputation.

The trial court concluded Petty failed to allege sufficient facts to establish special damages and granted defendants' motion.  The court's order did not specify whether it was dismissing all counts or granting summary judgment; however, a subsequent handwritten order mentioned only defendants' motion for summary judgment and that the court granted the motion in favor of defendants on all counts.

On appeal, Petty contends the trial court erred in granting summary judgment on his Consumer Fraud Act claims because a genuine issue of material fact exists as to damages.  Second, Petty contends he is entitled to attorney fees under the Consumer Fraud Act.  Third, Petty contends he presented sufficient evidence of the defendants' "reckless indifference" toward his rights to warrant an award of punitive damages.  Fourth, Petty contends the trial court improperly dismissed his remaining misappropriation of identity claims because special damages for mental anguish are presumed.  Finally, Petty contends the trial court improperly disregarded the revised Counts I, III, and IV in the third amended complaint.

DECISION

Before reaching the merits of this appeal, we must address the parties' confusion about whether the trial court dismissed Counts V and VI pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2002)) or granted summary judgment.

A section 2-615 dismissal recognizes the legal insufficiency of the complaint due to defects in the complaint's allegations.  
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 484, 639 N.E.2d 1282 (1994).  Alternatively, a trial court will grant summary judgment if it reviews the pleadings and the evidence in the record in a light most favorable to the nonmoving party and finds the nonmoving party failed to present a genuine issue of material fact.  
Harrison v. Hardin County Community School District No. 1
, 197 Ill. 2d 466, 470, 758 N.E.2d 848 (2001).  To determine whether the court dismissed this matter or granted summary judgment, we review how defendants' motion was decided by the trial court.  See 
Carter v. New Trier East High School
, 272 Ill. App. 3d 551, 555, 650 N.E.2d 657 (1995).

In this case, defendants' hybrid motion sought dismissal pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2002)) or, alternatively, summary judgment.  Although the trial court did not specify whether it was granting a dismissal or summary judgment, the order stated, "the motion for summary judgment must be granted."  More important, the court considered Petty's deposition testimony, which falls outside the scope of a section 2-615 dismissal on the pleadings.  

Based on the language in the order and the parties' treatment of it, we conclude the trial court granted summary judgment and review the matter accordingly.  The standard of review is 
de
 
novo
.  
Harrison
, 197 Ill. 2d at 470-71.

I.  CONSUMER FRAUD ACT — COUNTS I, III, & IV

A.  Actual damages - Count I

First, we must decide whether Petty presented a factual issue on actual damages to support the consumer fraud counts in his second amended complaint.

To sufficiently plead a private cause of action under section 2 of the Consumer Fraud Act, a plaintiff must allege: (1) the defendant engaged in a deceptive act; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade or commerce; (4) the plaintiff suffered actual damages; and (5) the damages were proximately caused by the deception.  
Oliveira v. Amoco Oil Co.
, 201 Ill. 2d 134, 149, 776 N.E.2d 151 (2002), see 815 ILCS 505/2 (West 2002).  Although the Attorney General may prosecute a violation without showing damages, a private party must show both a violation and actual damages to recover under the Consumer Fraud Act.  
Oliveira
, 201 Ill. 2d at 149.

A plaintiff need not prove the amount of damages to an absolute certainty; however, he must present enough evidence to create a genuine issue of fact pertaining to damages.  
City of Chicago v. Michigan Beach Housing Cooperative
, 297 Ill. App. 3d 317, 323, 698 N.E.2d 804 (1998).  That evidence must include a basis for computing damages with a fair degree of probability.  
Chicago
, 297 Ill. App. 3d at 323.  "[D]amages may not be predicated on 'mere speculation, hypothesis, conjecture or 

whim.' "  
Chicago
, 297 Ill. App. 3d at 323, quoting 
In Re Application of Busse
, 124 Ill. App. 3d 433, 438-39, 464 N.E.2d 651 (1984).  Generally in fraud cases, "damages are measured by the plaintiff's loss, not the defendant's gain."  
Chicago
, 297 Ill. App. 3d at 326.

In Petty's second amended complaint, he pleaded two types of actual damages under his consumer fraud counts -- lost commissions and dilution of goodwill.  Thus, we consider whether Petty created a fact issue as to the alleged damages.

1.  Lost commissions

Because damages must be based on the plaintiff's loss and not the defendants' gain (
Chicago
, 297 Ill. App. 3d at 326), we find Petty failed to present a question of material fact on his alleged lost commissions.  Petty bases his claim for lost commissions on Gregory Dodge's financial reports which show the dealership enjoyed increased profits from "Customer Labor" and used car sales after the "Customer One" letters were published.  However, the reports do not show any evidence of how the letters affected Petty's own commissions.  For instance, Petty did not present any evidence that his commissions dropped after the "Customer One" letters were mailed.  Instead, Petty relies on Gregory Dodge's used car sales and one of the mechanical department's accounts which showed increased profits beginning in September 1994.  Petty asks this court to infer that the increases are due to the publication of the "Customer One" mailings. 

We believe such an inference is inappropriate, especially because Petty did not dispute the fact that customers did not actually receive the letters until October.  This fact supports the trial court's conclusion that, based on Gregory Dodge's profits, Petty merely speculated he lost commissions as a result of the letters.

2.  Dilution of goodwill

Second, we find Petty did not acquire personal goodwill as a salesman; therefore, no question of fact exists to support   recovery of actual damages under the theory of dilution of goodwill.

" 'Goodwill is the value of a business or practice that exceeds the combined value of the physical assets.' "  
In re Marriage of Talty
, 166 Ill. 2d 232, 238, 652 N.E.2d 330 (1995).  Courts have also defined goodwill as the advantages that a business enjoys over its competitors as a result of its name, location and owner's reputation.  
Russell v. Jim Russell Supply, Inc.
, 200 Ill. App. 3d 855, 862-63, 558 N.E.2d 115 (1990).  Not all businesses possess goodwill, which is an intangible asset.  
Russell
, 200 Ill. App. 3d at 863.

In some cases, individuals in professional practices acquire  goodwill.  See 
Talty
, 166 Ill. 2d at 239.  However, Illinois courts have distinguished personal goodwill acquired by professionals, such as attorneys, from personal goodwill claimed by nonprofessionals.  See 
Talty
, 166 Ill. 2d at 239.  In 
Talty
, the court had to determine the extent to which a car dealership's goodwill was based on the owner's personal efforts.  Distinguishing the car dealership from professional practices, the court recognized personal and enterprise goodwill were distinct from one another in the case of the dealership.  The court held any goodwill the dealership acquired due to the owner's personal efforts would cease to exist if his involvement with the dealership ended.  
Talty
, 166 Ill. 2d at 240. 

However, Petty contends an individual can acquire goodwill and cites 
O'Hara v. Ahlgren, Blumenfeld, and Kempster
, 127 Ill. 2d 333, 344, 537 N.E.2d 730 (1989).  In 
O'Hara
, the court found the parties' contract was intended to transfer a deceased attorney's goodwill.  
O'Hara
 is inapposite because it involved the goodwill acquired by a professional; here, we are dealing with a nonprofessional.

Based on the above cases, we believe Petty, as an individual car salesman, did not acquire goodwill outside of the dealerships which employed him.  See 
Talty
, 166 Ill. 2d at 239-40.

Even if Petty had a rightful claim to personal goodwill as a salesman, he presents no evidence that he lost any of it due to the "Customer One" letters.

We agree with Petty's contention that courts should liberally construe the Consumer Fraud Act to effectuate its purposes.  815 ILCS 505/11a (West 2002).  But that does not excuse a complete failure of proof.  We believe Petty failed to present a factual issue concerning damages to goodwill.

B.  Attorney fees and punitive damages - Counts III & IV

Because we conclude Petty failed to show actual damages and summary judgment was proper, we also conclude the trial court properly disposed of the additional counts for attorney fees and punitive damages.  See 
Brody v. Finch University of Health Sciences
, 298 Ill. App. 3d 146, 161, 698 N.E.2d 257 (1998) (only prevailing parties are entitled to recover attorney fees); 
Hayman v. Autohaus on Edens, Inc.
, 315 Ill. App. 3d 1075, 1078, 734 N.E.2d 1012 (2000) (denying punitive damages absent a showing of actual damage in a fraudulent misrepresentation action).

C.  Special Damages

Petty also contends the trial court erred in disregarding the revised Counts I, III, and IV in his third amended complaint.  Petty contends the court granted him leave to amend his complaint to plead special damages and then retracted it by stating Petty only had the right to amend Counts V and VI. 

However, Petty never requested leave to amend Counts I, III, and IV to allege special damages, either after the court granted summary judgment or when he filed a motion to reconsider the summary judgment in December 2000.  Instead, Petty attempted to revive the counts more than two years later in his third amended complaint.  Petty contends the court allowed him to do this when it granted Petty leave to amend during the pretrial conference. During that conference, the court reiterated that it had disposed of Counts I through IV for failure to show actual damages.  The focus of the conference was to determine what damages Petty claimed with respect to the remaining counts for misappropriation.  In reference to Count V, the court suggested Petty move to amend the complaint to allege special damages, which his counsel did.

Based on the record, we believe Petty ignored the context of the court's leave to amend and mistakenly applied it to his Consumer Fraud counts.  Accordingly, the trial court did not abuse its discretion in restricting Petty's amendments to Counts V and VI and disregarding the revised Consumer Fraud counts in the third amended complaint.

II. COMMON LAW MISAPPROPRIATION OF IDENTITY — COUNTS V & VI

Next, we consider whether the trial court properly granted summary judgment on Petty's misappropriation of identity claims for failure to show damages.

A.  Presumed damages

Misappropriation of identity is a tort arising from the right to privacy and is designed to prevent the commercial use of one's name or image without consent.  
Ainsworth v. Century Supply Co.
, 295 Ill. App. 3d 644, 648, 693 N.E.2d 510 (1998).  To plead misappropriation of identity, the plaintiff must claim "an appropriation without consent, of one's name or likeness for another's use or benefit."  
Dwyer v. American Express Co.
, 273 Ill. App. 3d 742, 748, 652 N.E.2d 1351 (1995).  A claimant alleging misappropriation of identity need not prove actual damages, because the court will presume damages if someone infringes another's right to control his identity.  
Ainsworth
, 295 Ill. App. 3d at 650.

In 
Ainsworth
, the plaintiff brought an action for misappropriation of identity after the defendants used the plaintiff's image from an instructional video in a television commercial.  Although the plaintiff agreed to appear in the video, he did not consent to the use of his image in a commercial.  As in this case, the trial court granted the defendants summary judgment on the misappropriation claims, finding the plaintiff failed to present an issue on damages.  On appeal, the court held that misappropriation of identity infringes the right to control the use of one's image; therefore, the courts will presume nominal damages.  
Ainsworth
, 295 Ill. App. 3d at 649.  The court said:

"[P]laintiff has alleged the infringement of his legal right to use of his image.  It is proper to vindicate plaintiff's right to the use of his image against this deliberate violation, even if plaintiff cannot prove actual damages. [Citation omitted.] In addition, we note that the courts of Illinois have long presumed that nominal damages are available for this tort."  
Ainsworth
, 295 Ill. App. 3d at 650.

Based on this reasoning, the court reversed the order granting summary judgment.  Following 
Ainsworth
, we believe the trial court erred in granting summary judgment to defendants on Count V.

B.  Actual damages vs. special damages

In addition to nominal damages, Petty contends special damages, such as mental distress, also are presumed in misappropriation of identity actions. 

First, it is helpful to distinguish actual and special damages.  

" '
Special
, as contradistinguished from 
general
 damage, is that which is the natural, but not the necessary, consequence of the act complained of.'
  
Roberts v. Graham
, 73 U.S. 578, 579, 18 L. Ed. 791 (1867). *** Whether the particular kind of injury gives rise to 'special' damages thus depends on the tort committed.  The usual consequences of a wrong are 'general' damages, and the unusual consequences are 'special.' [Citation omitted.] *** The classification of emotional distress can be difficult: are emotional injuries expected or unexpected ***?"  
Neal v. Honeywell, Inc.
, 191 F. 3d 827, 832 (1999).

In this case, we must address whether emotional distress is an actual or special damage in tort cases based on misappropriation of identity.

In 
Eick v. Perk Dog Food Co.
, 347 Ill. App. 293, 106 N.E.2d 742 (1952), the plaintiff brought an action against the defendant for using her photograph in an advertisement without authorization.  The plaintiff claimed she lost sleep and suffered reputational damage, humiliation, and mental anguish; however, the plaintiff did not allege special damages.  Recognizing a tort for invasion of privacy, the court said:

"Basically, recognition of the right to privacy means that the law will take cognizance of an injury, even though no right of property or contract may be involved and even though the damages resulting are exclusively those of mental anguish.  A person may not make an unauthorized appropriation of the personality of another, especially of his name or likeness, without being liable to him for mental distress as well as the actual pecuniary damages which the appropriation causes."  
Eick
, 347 Ill. App. at 299.

The court in 
Ainsworth
 presumed nominal damages in a misappropriation of identity case.  
Ainsworth
, 295 Ill. App. 3d at 649.  The court also found the plaintiff presented a fact issue on actual damages.  First, the court held the plaintiff, who testified he was angry about the misappropriation, did not have to experience severe mental distress to recover more than nominal damages in a misappropriation of identity case.
  Second, the court found the plaintiff's image had value to the defendant, and as a result of the misappropriation, the defendant derived a commercial benefit.  The court reversed summary judgment to give the plaintiff the opportunity to prove the value of the defendant's use of his image and damages arising from emotional distress.  
Ainsworth
, 295 Ill. App. 3d at 650-51.

In 
Smith v. WGN, Inc.
, 47 Ill. App. 2d 183, 197 N.E.2d 482 (1964), the plaintiff sued the defendant for using in its television commercial video footage of the plaintiff playing tennis.  This court relied on 
Eick
 for the proposition the plaintiff could "recover more than nominal damages" for anguish, distress, and humiliation in a right to privacy action.  
Smith
, 47 Ill. App. 2d at 186.

Chrysler contends emotional and reputational damages are special damages which must be pleaded with particularity according to the holding in 
Schaffer v. Zekman
, 196 Ill. App. 3d 727, 736, 554 N.E.2d 988 (1990).  Chrysler contends the evidence obtained through Petty's deposition testimony consists of general allegations, just like the allegations in 
Schaffer
.  See 
Schaffer
, 196 Ill. App. 3d at 733 (holding special damages for mental anguish and humiliation must be pleaded with particularity to sustain a
 false-light invasion of privacy cause of action).

In Petty's deposition, he testified he was shocked, puzzled, upset, and enraged by the "Customer One" letter bearing his name.  Additionally, Petty testified he lost sleep and was teased by his coworkers.  Chrysler argues this testimony is simply conclusory evidence that is legally insufficient to survive summary judgment.   

Schaffer
 is a false-light invasion of privacy case involving defamatory language.  The present appeal is based on a commercial misappropriation of identity.  
Schaffer
, which raised free speech issues, is not instructive.

Based on the above cases, we conclude damages for mental suffering and distress could be expected and constitute actual damages in misappropriation of identity cases.  Furthermore, plaintiff's deposition testimony concerning lost sleep and the distress he suffered due to his name appearing in Gregory Dodge's customer mailings is sufficient to present a fact issue on damages.  Not only are nominal damages presumed, plaintiff also presented a fact issue on actual damages.  Accordingly, we reverse the trial court's judgment granting defendants' motion for summary judgment on Count V.

C.  Punitive damages - Count VI

Finally, we must decide whether the trial court properly barred Petty from seeking punitive damages for misappropriation of identity.

Punitive damages are not favored in the law.  
Canal and Hale, Ltd. v. Tobin
, 304 Ill. App. 3d 906, 920, 710 N.E.2d 861 (1999).  A court may award punitive damages if the defendant's tortious acts are malicious or display reckless disregard for another's rights.  
Ainsworth
, 295 Ill. App. 3d at 651.  The purpose of punitive damages is to punish the defendant and deter others from the same conduct; however, they are awarded only in cases with aggravated circumstances, such as fraud, willfulness, wantonness, or malice.  
Canal
, 304 Ill. App. 3d at 920.  "Punitive damages should not be awarded if the defendant's misconduct is not above and beyond the conduct needed for the basis of the underlying cause of action."  
Canal
, 304 Ill. App. 3d at 920, citing 
Parsons v. Winter
, 142 Ill. App. 3d 354, 361, 491 N.E.2d 1236 (1986).  The initial decision of whether punitive damages are available to the plaintiff is a matter of law for the trial judge to determine.  
Ainsworth
, 295 Ill. App. 3d at 651.  

In 
Ainsworth
, the court reversed summary judgment on punitive damages because there were facts showing the defendants' culpable mental state.  Specifically, the defendants failed to obtain the plaintiff's consent to use his image in the television commercial because a defendant's sales manager assumed the plaintiff "would be thrilled" to appear in a commercial.  
Ainsworth
, 295 Ill. App. 3d at 651.  In addition, the defendants initially denied the plaintiff appeared in the commercial when the plaintiff confronted them about it.  The record also indicated the defendants continued to air the commercial for months after the plaintiff requested they stop broadcasting it.  On appeal, the court found these facts presented a question of material fact concerning defendants' mental state and the court reversed the order granting summary judgment, thus allowing the plaintiff's claim for punitive damages to proceed.  
Ainsworth
, 295 Ill. App. 3d at 652.

In this case, the only evidence Petty cites to support his claim for punitive damages is Gregory Dodge's unauthorized use of his name on the "Customer One" enrollment form, Alexanian's false affidavit submitted by Gregory Dodge during discovery, and Chrysler's disputed knowledge of his departure from Gregory Dodge prior to the mailings.  These facts alone do not present evidence of malice or a reckless disregard of Petty's rights, nor do the facts in this case approach the egregiousness of 
Ainsworth
.  Furthermore, unlike 
Ainsworth
, Chrysler immediately removed Petty's name from the mailings upon his request and before the next publication.  Absent some indication of malice or reckless disregard, we conclude punitive damages are inappropriate in this case and the trial court did not err in granting defendants summary judgment on Count VI.

CONCLUSION

For the above stated reasons, we affirm the trial court's decision on Counts I, III, IV, and VI, and reverse and remand Count V for further proceedings.

Affirmed in part; reversed and remanded in part.

CAHILL, and BURKE, JJ., concur.