*In re* MARRIAGE OF HAROLD R. PICK, Petitioner-Appellant, and DOLORES T. PICK, Respondent-Appellee (Roger A. White, Appellee).

Second District   No. 2—87—0175

Opinion filed March 4, 1988.

296

Linda S. Kagan, of Tews, Theisen & Theisen, of Chicago (Jerome Marvin Kaplan, of counsel), for appellant.

Roger A. White, of Roger A. White & Associates, Ltd., of Lake Bluff, for appellees.

JUSTICE DUNN delivered the opinion of the court:

Petitioner, Harold R. Pick, appeals from several orders entered by the trial court during the dissolution proceedings involving petitioner and respondent, Dolores T. Pick. Three issues are presented for our consideration: (1) whether the trial court erred (a) in appointing a "sequestrator" to remove nonessential property from the marital home for safekeeping, and (b) thereafter ordering the sequestrator to arrange for the sale of certain items in order to satisfy various orders and judgments entered by the court against petitioner; (2) whether the attorney fees awarded to respondent's attorney were excessive; and (3) whether the court's distribution of certain property was an abuse of discretion.

Respondent has not filed a brief in this court; however, we shall consider the merits of the appeal as it pertains to respondent under the guidelines set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128. Appellee, Roger White, re-

spondent's former attorney, filed a brief responding to petitioner's attorney fees argument. We note that appellee's brief fails to comply with Supreme Court Rule 341 in several respects; most importantly appellee has failed to cite to the pages of the record relied on in support of his argument. 107 Ill. 2d R. 341(e)(7).

Petitioner and respondent were married on June 2, 1978. On July 8, 1982, petitioner filed a petition for dissolution of the marriage. On August 15, the court entered an order restraining either party from removing property from the marital home. In early December, a substantial amount of property disappeared from the marital home. On December 10, the court, at the request of respondent and with the acquiescence of petitioner, appointed attorney Stephen Katz as a "sequestrator" to remove nonessential property from the marital home for safekeeping. The order appointing Katz provided that Katz would serve without bond, petitioner would be responsible for the payment of Katz' fees, and Katz would not be liable for any act done in good faith. Because of the substantial losses, Katz proceeded to the marital home within hours of entry of the order and arranged for many items to be placed into storage.

Thereafter, the court on various occasions ordered Katz to remove certain of the items from storage, arrange for the sale of the items at an auction house, and apply the proceeds to an assortment of debts owed by petitioner, including temporary maintenance arrearages and Katz' fees. On December 12, 1983, Katz filed a report indicating that an auction sale had been conducted at Hanzel Galleries. The proceeds were sufficient only to compensate respondent for a portion of the temporary maintenance owed.

Meanwhile, petitioner's former attorney, Berle Schwartz, petitioned for approximately $20,000 in attorney fees. Schwartz requested the court order Katz to arrange for the sale of some of the items held in storage for purposes of satisfying the fees owed. The court entered a judgment in favor of Schwartz and complied with Schwartz' request to have property sold. Enforcement of the judgment was stayed by this court. Thereafter, Schwartz served citations to discover assets on Katz and the storage company in an effort to enforce the fee judgment. After a hearing on the return of the citations, the court again authorized Katz to arrange for the sale of certain items and to disburse the proceeds to the storage company for accumulated charges, to Schwartz for the attorney fees owed, and to Katz for services rendered. Petitioner's motion to quash the citations and vacate the order was denied. His interlocutory appeal was dismissed; however, the order authorizing the sale was stayed by this court pending a final order

in the cause.

During the course of the proceedings several hearings were conducted relative to respondent's request to obtain attorney fees from petitioner for work performed on respondent's behalf by Roger White. The court awarded fees to White on three separate occasions. The total amount awarded was $34,462.

In its final judgment dissolving the marriage, the court determined the personal property remaining in the marital home was marital property that would be awarded to respondent.

## I

Petitioner's first argument challenges the court's initial appointment of attorney Katz, the propriety of the orders authorizing Katz to arrange for the public sale of various items in order to satisfy assorted debts found to be owed by petitioner, and the sufficiency of Katz' final report. The first two challenges are predicated on petitioner's claim that recent amendments to the Code of Civil Procedure have effectively precluded the courts from resorting to a sequestrator or sequestration as a means of enforcing court orders or judgments. The third challenge seeks a more thorough final inventory and accounting.

■ The first matter to be resolved is the propriety of the court's appointment of attorney Katz to serve as a "sequestrator" and in that capacity arrange for the safekeeping of nonessential personal property remaining in the marital home. The court's appointment of Katz, a neutral attorney, was in response to the disappearance of a large amount of property from the marital home in violation of an order restraining either of the parties from removing any of the property. The appointment was made at the request of the respondent and with the acquiescence of petitioner. The purpose of the appointment was to prevent further dissipation of the property located in the marital home. Because responsibility for the disappearance of the property was in dispute, the appointment of Katz to safekeep the remaining property was beneficial to both parties. In our opinion, these circumstances warranted the appointment of a neutral party to preserve the remaining property pending final distribution.

Petitioner contends the authority to appoint a "sequestrator" has been abrogated. We will discuss this contention at length in our upcoming discussion of the court orders authorizing Katz to arrange for the sale of property to satisfy debts owed by petitioner. At this juncture, suffice it to say that in our view Katz' role at the time of his initial appointment was consistent with that of a receiver, rather than

a sequestrator. Viewed in this manner, the initial appointment of Katz was well within the discretionary authority of the court.

A "receiver" is an indifferent person appointed by the court on behalf of all parties to take possession and hold property for the benefit of the party ultimately entitled. (*Firebaugh v. McGovern* (1949), 404 Ill. 143, 148-49; *Compton v. Paul K. Harding Realty Co.* (1972), 6 Ill. App. 3d 488, 498.) A "sequestrator," on the other hand, is typically appointed to seize and manage or sell the assets held by a noncomplying party in order to enforce a judgment. (*In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 423-24.) The object of appointing a receiver is to prevent injury and avoid injustice. (*Simpson v. Adkins* (1941), 311 Ill. App. 543, 550.) The appointment of a receiver rests largely in the discretion of the trial court (*People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 123) and is provided for in section 2—415 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—415). The circumstances at the time Katz was appointed clearly warranted the appointment of a neutral party to preserve the remaining assets. The mislabeling of Katz by the parties and the trial court does not alter the duties initially assigned to Katz. (*Hilkovitch*, 124 Ill. App. 3d at 424.) Therefore, there was no error in the appointment of Katz to preserve the property remaining in the marital home.

Petitioner next contends the court lacked the authority to order Katz to remove some of the items from storage and arrange for their sale at auction to satisfy court orders and judgments entered against petitioner. With this contention we agree.

Effective July 1, 1982, the Civil Practice Act of 1933 (the Practice Act) was repealed, and the Code of Civil Procedure (the Code) became law. The Practice Act contained a provision entitled "Enforcement of Order," which provided:

> "When a defendant is defaulted, or upon hearing, the court may enter such order as may be just, and may enforce such order, either by sequestration of real and personal estate, by attachment against the person, by fine or imprisonment, or both, by causing possession of real and personal estate to be delivered to the party entitled thereto, or by ordering the demand of the plaintiff to be paid out of the effects or estate sequestered, or which are included in such order; and by the exercise of such other powers as may be necessary for the attainment of justice." (Ill. Rev. Stat. 1981, ch. 110, par. 392.)

Section 392 of the Practice Act provided the trial court with the authority to resort to sequestration as a means of enforcing a judgment or order. Based on section 392, several cases approved the use of se-

questration in dissolution proceedings. *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452 (in view of respondent's dissipation of marital assets, court could properly have deemed sequestration a necessary and just measure to secure performance of its maintenance and other orders); *In re Marriage of Rochford* (1980), 91 Ill. App. 3d 769 (appointment of sequestrator to seize personal property for purposes of enforcing order dissolving the marriage entirely proper); *Victor v. Victor* (1961), 31 Ill. App. 2d 60; see O'Shea, *The Sequestrator—The Court's Enforcer*, 70 Ill. B.J. 494 (1982).

■ With the advent of the Code of Civil Procedure, the authority to resort to sequestration to enforce judgments or orders arising out of dissolution proceedings has been curtailed. Section 2—1402 of the Code, the provision that superceded section 392, does not specifically include sequestration as an enforcement remedy available to the trial court. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402.) Subparagraph (g) does provide that section 2—1402 "is in addition to and does not affect enforcement of judgments or proceedings supplementary thereto, by any other methods now or hereafter provided by law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402(g).) However, with the repeal of section 392 of the Practice Act, we are not aware of any law authorizing sequestration in the present context. (Sequestration does remain one form of relief available to the Director of Insurance for enforcement of insurance laws. (Ill. Ann. Stat., ch. 110, par. 2—1501, at 47 (Smith-Hurd Supp. 1987)).) The only mention of sequestration contained in section 2—1402 is found in subsection (h), which prohibits a court from ordering a judgment satisfied from property statutorily exempt from certain types of process, including sequestration. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402(h); see *Cochennour v. Lofton* (1978), 62 Ill. App. 3d 955, 956.) Thus, with the repeal of section 392 of the Practice Act and the enactment of section 2—1402, the use of sequestration as an enforcement remedy seems for the most part to have been abolished.

The commentary in the historical and practice notes and the supplements thereto following two of the sections of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) could lead one to conclude otherwise. The supplement to historical and practice notes to section 508(c) of the Dissolution Act, which provides for the enforcement of a judgment for attorney fees, states that sequestration of personal property is one of the methods available for enforcement. (Ill. Ann. Stat., ch. 40, par. 508, at 121 (Smith-Hurd Supp. 1987).) However, the case relied on for this proposition, *In re Marriage of Rochford* (1980), 91 Ill. App. 3d 769, was decided on the basis of the

authority formerly granted in section 392. Since section 105 of the Dissolution Act states that the provisions of the Civil Practice Law shall apply to dissolution proceedings (Ill. Rev. Stat. 1985, ch. 40, par. 105), and section 2—1402 is not mentioned, the supplementary note to section 508(c) is not persuasive.

Section 511 of the Dissolution Act provides the procedural mechanisms for the enforcement or modification of a judgment of dissolution of marriage. (Ill. Rev. Stat. 1985, ch. 40, par. 511.) The supplement to historical and practice notes to section 511 states that "[t]he remedy of sequestration involving seizure and sale of a non-complying party's real or personal estate, is also available." (Ill. Ann. Stat., ch. 40, par. 511, at 147 (Smith-Hurd Supp. 1987).) In support, the commentators cite *Geittmann v. Geittmann* (1984), 126 Ill. App. 3d 470, as construing section 2—1402 to include the remedy of sequestration in substance, *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, and *In re Marriage of Rochford* (1980), 91 Ill. App. 3d 769. The latter two cases are not troubling because *Hilkovitch* did not address the question presented here; rather, it presumed sequestration applied, and *Rochford* was decided on the basis of section 392. *Geittmann*, while not so easily disposed of, addresses another subsection of section 2—1402 and in our view was interpreted too broadly by the commentators.

At issue in *Geittmann* was the trial court's post-dissolution order directing petitioner, an attorney, to assign to respondent's trustee all of his shares in his professional corporation, and directing the trustee to make installment payments to respondent from the corporate proceeds in order to satisfy a judgment for unpaid maintenance. (*Geittmann*, 126 Ill. App. 3d at 471.) Petitioner contended the order fashioning this remedy, which was granted in response to a petition for sequestration brought by respondent prior to the repeal of section 392, was beyond the court's authority. The court stated the essential question was whether the modifications of the new statute (section 2—1402) precluded the remedy of sequestration, which was explicitly authorized under the former statute. (*Geittmann*, 126 Ill. App. 3d at 474.) While not specifically answering this broad question, the court did conclude that the trustee arrangement fashioned by the trial court was consistent with section 2—1402. The disposition turned on the difference between property and income. The court concluded the shares of stock in the husband's professional corporation were income rather than property, which under subsection (c) of section 2—1402 would have to be delivered up to the sheriff for sale. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402(c).) The court stated the trial court's rem-

edy was consistent with subsection (b)(2), which empowers the court to:

> "Compel the judgment debtor to pay to the judgment creditor or apply on the judgment, in installments, a portion of his or her income, however or whenever earned or acquired ***." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402(b)(2).)

The court concluded the trial court's act of placing petitioner's stock in trust in order to satisfy the judgment owed to respondent did nothing more than insure that a portion of petitioner's income regularly would be paid in satisfaction of the outstanding judgment. *Geittmann*, 126 Ill. App. 3d at 475-76.

■ While *Geittmann* supports the use of a sequestration-type arrangement in the limited circumstances of the disbursement of income in satisfaction of a dissolution order, *Geittmann* does not lend support to a broad application of sequestration to the enforcement of judgments and court orders, as did section 392 of the Practice Act. Pertinent to our case, which involves the seizure and sale of personal property by a neutral third party, section 2—1402(c) provides:

> "All property ordered to be delivered up [by the judgment debtor] shall, except as otherwise provided in this section, be delivered to the sheriff to be collected by the sheriff or sold at public sale and the proceeds thereof applied towards the payment of costs and the satisfaction of the judgment." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1402(c).)

The sale of personal property by a private party to satisfy a judgment is not provided for. Rather, section 2—1402(c) mandates that property to be sold to satisfy a judgment shall be delivered to the sheriff for public sale. Here, the court authorized Katz to remove items from storage, arrange for their sale, and retain the proceeds for purposes of satisfying orders and judgments entered by the court. Under the laws in effect at the time, the sheriff, not Katz, was the only party authorized to enforce judgments through the sale of personal property. Since the sheriff was not entrusted with the responsibility to arrange for the sale, the court exceeded its authority and was in error. Therefore, the orders authorizing Katz to arrange for the sale of property to satisfy court orders and judgments must be reversed.

In view of our determination that the court erred in ordering Katz to arrange for the sale of property, we need not address petitioner's claim regarding the adequacy of Katz' final report.

## II

Petitioner's second argument challenges the orders awarding

Roger White $34,462 in attorney fees for services rendered on behalf of respondent. Petitioner contends the fees awarded were excessive because: (1)(a) White told respondent that a prior interlocutory appeal was "on him," and (b) since the appeal was unsuccessful respondent did not benefit; (2) White's conduct during negotiations for the sale of a stable did not benefit respondent; (3) White pursued claims involving telephone bills that respondent had instructed him not to; (4) White was compensated for matters outside the dissolution proceedings; and (5) stricter proof of the reasonableness of the fees should have been presented.

Section 508 of the Dissolution Act provides in pertinent part:

"Attorney's Fees. (a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following:

(1) The maintenance or defense of any proceeding under this Act.

(2) The enforcement or modification of any order or judgment under this Act other than the enforcement of a provision for child support.

(3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders." (Ill. Rev. Stat. 1985, ch. 40, par. 508.)

An award of attorney fees in dissolution proceedings is within the sound discretion of the trial court, and a fee award will not be reversed by a court of review unless a clear abuse of discretion is shown. (*In re Marriage of Westcott* (1987), 163 Ill. App. 3d 168, 179.) We note before proceeding that the trial court found the respondent financially unable to pay her attorney fees. This finding is not challenged on appeal.

Petitioner first challenges the fees incurred in the unsuccessful prosecution of an appeal stemming from the trial court's dismissal of respondent's rules to show cause why petitioner was not in contempt of court for violating a temporary restraining order (TRO). The primary issue raised was "whether the 10-day time limit for a TRO issued without notice required by section 11—101 of the Code of Civil Procedure [citation] applies to a TRO issued without notice under section 501 of the Illinois Marriage and Dissolution of Marriage Act [citation]." (*In re Marriage of Pick* (1983), 119 Ill. App. 3d 1061, 1063.)

This court found the 10-day limit did apply, and therefore petitioner, who violated the TRO after the expiration of 10 days, was properly found not to be in contempt of court. *Pick*, 119 Ill. App. 3d at 1069.

■ Initially, we do not agree that attorney White's statement to respondent regarding payment of fees for the appeal precludes White from recovering fees from petitioner. Section 508(a) provides that one spouse can be ordered to pay attorney fees necessarily incurred by the other spouse. (Ill. Rev. Stat. 1985, ch. 40, par. 508(a).) Although White told respondent he would not charge respondent for the appeal, his statement does not mean the fees were unnecessarily incurred. Moreover, no such statement was made to petitioner. Therefore, in view of section 508(a), White's gratuitous statement to respondent does not preclude him from recovering fees for the work done in prosecuting the appeal.

The more difficult question presented is whether petitioner can be ordered to pay attorney fees to respondent for the unsuccessful prosecution of an interlocutory appeal. While section 508(a)(3) provides that a spouse may recover fees incurred in "the defense of an appeal of any order or judgment" (Ill. Rev. Stat. 1985, ch. 40, par. 508(a)(3)), there is no express provision addressing the recovery of fees incurred in the prosecution of an appeal. Despite the absence of clear legislative authority, it was determined under the precursor to section 508 (Ill. Rev. Stat. 1975, ch. 40, par. 16) that attorney fees for the successful prosecution of an appeal were recoverable. (*McCarrel v. McCarrel* (1977), 48 Ill. App. 3d 666, 669-70; *Bramson v. Bramson* (1958), 17 Ill. App. 2d 87, 96-101.) In *Bramson*, the court concluded, "[t]here seems to be no conceivable reason why the legislature should want to deny compensation for services in reversing an erroneous and therefore unjust decree." *Bramson*, 17 Ill. App. 2d at 100.

■ Under section 508 of the Dissolution Act, however, the court in *In re Marriage of Wentink* (1984), 132 Ill. App. 3d 71, 81, held that a respondent who filed a cross-appeal and ultimately prevailed in the appellate court could not recover attorney fees because section 508 only provided for fee awards in the defense of appeals. However, as pointed out in the supplement to historical and practice notes to section 508:

> "The Wentink decision did not refer to the general authority under subsection (a)(1) to award fees for the 'maintenance or defense of any proceeding' under the Act; neither did the decision mention the Historical and Practice Notes to this section which suggest that the traditional 'outcome' test be used in these determinations with respect to prosecutions of appeals."

(Ill. Ann. Stat., ch. 40, par. 508, at 120 (Smith-Hurd Supp. 1987).)

The section of the historical and practice note referred to provided:

"This subsection [section 508(a)(3)] makes it clear that the court is empowered to award fees in connection with the defense of an appeal regardless of the outcome of the appeal. However, consistent with prior law, the same blanket rule does not apply in connection with the prosecution of an appeal." (Ill. Ann. Stat., ch. 40, par. 508, Historical and Practice Notes, at 639 (Smith-Hurd 1980).)

In our opinion, the views expressed in the supplement to historical and practice notes are persuasive. We, too, agree with the reasoning in *Bramson* as it applies to the successful prosecution of an appeal and decline to follow the apparent contrary decision in *Wentink*. In addition, we believe an outcome determinative test is the appropriate benchmark for determining whether a party prosecuting an appeal from a prejudgment order in a dissolution proceeding can recover attorney fees under section 508.

■ Our adoption of an outcome determinative test is predicated on the specific language contained in section 508, and the absence of any benefit to the party prosecuting an unsuccessful appeal. Section 508(a)(3) specifically includes the defense of an appeal of any order or judgment as one of the proceedings warranting the awarding of attorney fees. No mention is made of the prosecution of an appeal. However, as stated, we believe the awarding of fees to the successful appellant is appropriate because the successful prosecution serves to reverse an unjust order or judgment, thereby benefitting the appellant and satisfying the "necessarily incurred" requirement of section 508. We do not, however, believe that the unsuccessful appellant is entitled to fees under section 508. Unlike the successful appellant, the unsuccessful appellant does not occasion a reversal of a trial court order and does not procure any benefit. Rather, the status existing prior to the appeal is maintained. We believe authorizing fees in such circumstances contravenes the legislative intent behind section 508. In the present case, respondent's rules to show cause were dismissed and her appeal was unsuccessful. Therefore, the awarding of fees for the unsuccessful prosecution of the prejudgment appeal was an abuse of discretion.

■ The remainder of the arguments raised by petitioner can be easily disposed of. White stated that in negotiating the sale of the stable, respondent was aware of his request for a $10,000 payment. White testified that he and respondent agreed the $10,000 would be a

way to defer attorney fees or the money would be paid to respondent. Respondent testified otherwise. The issue involves one of credibility, which is best suited for the trial court. The testimony supporting petitioner's claim that respondent told White not to pursue payment of telephone bills is ambiguous and therefore does not support a finding that the trial court abused its discretion in awarding fees for the work associated with the telephone bills. The discussions claimed to be outside the dissolution proceedings involved the theft and retrieval of marital property, which is clearly related to respondent's interests in the dissolution proceedings. Finally, extensive time records were introduced into evidence, and there was comprehensive inquiry into the services rendered, thereby refuting petitioner's contention that the fees were not proved reasonable. In view of the extreme litigious nature of petitioner, who at one point stated he was not being facetious in claiming he was in court at least once every week during the pendency of the case, there is little doubt that the hours claimed could easily be accounted for.

## III

In his third argument, petitioner argues the trial court erred in awarding respondent certain items of petitioner's nonmarital property left at the marital residence. According to petitioner, the trial court abrogated its statutory duty by not assigning to him the nonmarital property left in the residence which clearly belonged to him. Petitioner's authority in support of this argument is confined to the first sentence of section 503(d) of the Dissolution Act, which mandates that "in a proceeding for dissolution of marriage *** the court shall assign each spouse's nonmarital property to that spouse" (Ill. Rev. Stat. 1985, ch. 40 par. 503(d)), and a portion of the historical and practice note commenting on this provision (Ill. Ann. Stat., ch. 40, par. 503, at 53 (Smith-Hurd Supp. 1987)).

In its final judgment of dissolution of marriage, the court made numerous findings regarding the status of the parties' property. Several items were found to be petitioner's nonmarital property, and several items were found to be respondent's nonmarital property. As to the property remaining in the marital home, the court determined it was marital property and awarded it to respondent. In a corresponding memorandum, the court stated its reasons therefore: (1) Mr. Pick's petition alleged the parties had acquired substantial marital property including furniture, furnishings and personal effects in the house; (2) the property was clearly contributed to the marital estate and transferred into some form of co-ownership; and (3) reimburse-

ment to the parties was impractical.

■■ A trial court's division of property will not be disturbed absent an abuse of discretion. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127.) It is the appellant's burden on appeal to demonstrate that an abuse of discretion has occurred in the trial court warranting reversal. Supreme Court Rule 341(e)(7) therefore requires that argument in appellant's briefs include citations to the authorities and the pages of the record relied on. (107 Ill. 2d R. 341(e)(7); see *Webb v. Angell* (1987), 155 Ill. App. 3d 848, 854.) In this argument, petitioner has utterly failed to carry his burden. The gist of petitioner's argument is that certain items belonging to him were wrongfully awarded to respondent. However, petitioner fails to indicate in his argument which items he claims are rightfully his. Furthermore, he has failed to refer this court to specific page citations of the record which would support his argument. We are not obligated to search the record for evidence supporting an appellant's contentions. (*Webb*, 155 Ill. App. 3d at 854.) Finally, the limited authority relied on by petitioner fails to support his argument. The court followed the mandate of section 503(d). The property involved was classified as petitioner's nonmarital, respondent's nonmarital, or marital. Under the circumstances, we conclude that petitioner has failed to demonstrate the trial court abused its discretion in awarding the property remaining in the marital home to respondent.

For the foregoing reasons, the order appointing Katz is affirmed, the orders authorizing Katz to arrange for the sale of personal property are reversed, the attorney fees awarded to White are affirmed except for the amount associated with the unsuccessful appeal, and the final property distribution is affirmed. The cause is remanded for proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

LINDBERG, P.J., and UNVERZAGT, J., concur.