**Barkat U. KHAN and Khan & Associates, Inc., an Illinois corporation, Plaintiffs,**

**v.**

**STATE OIL COMPANY, a corporation, Defendant.**

No. 94 C 35.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 13, 1995.

David C. Bogan, Champ W. Davis, Jr., Denise Michael Kaplan, Davis, Mannix & McGrath, Chicago, IL, Gregory James Ellis, Law Offices of Gregory J. Ellis, Oak Brook, IL, for Barkat U. Khan, Khan & Associates, Inc., an Illinois corporation.

Paul T. Kalinich, Kalinich, McCluskey & Sullivan, P.C., Glen Ellyn, IL, John C. Baumgartner, Churchill, Baumgartner & Phillips, Ltd., Grayslake, IL, for State Oil Company, a corporation.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court are the parties' cross-motions for summary judgment on Count II, and Defendant State Oil Company's ("State Oil") motion for summary judgment on Counts I and IV. Also before the court are State Oil's motion to strike Plaintiff's expert report, its motion to bar that expert's testimony, and its motion in limine regarding that expert's testimony. Plaintiff has indicated that he will voluntarily dismiss Count III.

## I. *BACKGROUND*

Plaintiffs Barkat U. Kahn ("Kahn") and Kahn & Associates, Inc. ("K & A") (collectively "Plaintiffs") bring this action against State Oil claiming damages for violations of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–41 (Count I), the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. § 1 (Count II), and for breach of contract (Count IV). The court exercises jurisdiction over the PMPA and Sherman Act claims pursuant to 28 U.S.C. § 1331, and over the contract claim under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

On January 20, 1992, Khan and State Oil entered a written lease and supply agreement ("Agreement") regarding a gasoline service station (the "Station"). In relevant part, paragraph 31 of the Agreement provides:

> In order to assist in maintaining the competitive position of both Landlord and Tenant, The [sic] Landlord will from time to time establish a recommended retail pump price for each type of gasoline sold at the location. The Landlord shall charge the Tenant for each transport of gasoline at the recommended retail pump price less margin and sales tax. The Tenant's margin will be $0.0325 (three and ¾ cents) per gallon. In the event the Tenant elects to sell at retail at a price in excess of the recommended retail pump price established by the Landlord, the Tenant shall pay the Landlord a sum equal to the difference between the retail pump price at which the gasoline in question has been sold, and the recommended retail pump price established by the Landlord multiplied by the number of gallons sold. In the event the Tenant elects to sell at a retail pump price below the recommended retail pump price established by the Landlord, the Tenant shall not be entitled to a reduction in price to cover the difference.

The Agreement also provides for rent in the amount of $7,500 per month in 1992, $8,000 per month in 1993, and $8,500 per month in 1994.

After execution of the agreement, Khan took possession of the Station and remained in possession from January 1992 to February 1993. During that time, pursuant to the Agreement, Plaintiffs purchased from State Oil and resold various grades of gasoline. Both parties agree that Khan was a franchisee and State Oil was a franchisor under the definitional provisions of the PMPA.

On January 27, 1993, State Oil issued a Notice of Termination, giving Plaintiffs five-days notice of State Oil's intent to terminate the Agreement as of February 2, 1993.

State Oil explains that this notice was issued for non-payment of amounts owed. On February 8, 1993, State Oil brought a forcible entry and detainer action in DuPage County and a separate action to collect on the debt. The Circuit Court of the Eighteenth Judicial Circuit of Illinois appointed a receiver to operate the Station.

Khan removed State Oil's action to federal court, arguing that the PMPA applied. On May 12, 1993, the court denied State Oil's motion for summary judgment, because the court had not determined that, as a matter of law, State Oil's January 27, 1993 notice was reasonable. The court found that it did not have jurisdiction over State Oil as a plaintiff franchisor under the PMPA because the PMPA grants jurisdiction only over franchisee actions. *State Oil Co. v. Khan,* 839 F.Supp. 543 (N.D.Ill.1993). By order of December 3, 1993, this court remanded the action back to DuPage County. In addition to the instant case in federal court, Khan filed state counterclaims and a third-party complaint in the remanded state collection action.

After the state court appointment of the receiver, State Oil issued a second notice of termination on May 29, 1993, providing for termination effective September 3, 1993. The receiver ran the Station from February until November 1993.

## II. *DISCUSSION*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Transportation Communications Int'l Union v. CSX Transp., Inc.,* 30 F.3d 903, 904 (7th Cir.1994). The court evaluates all evidence in the light most favorable to the non-movants. *Serfecz v. Jewel Food Stores,* 67 F.3d 591, 596 (7th Cir.1995). To withstand summary judgment, disputed facts in a case must be those that might affect the outcome of the suit. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). Summary judgment is not a discre-

tionary remedy and must be granted when the movant is entitled to it as a matter of law. *Anderson v. P.A. Radocy & Sons, Inc.,* 67 F.3d 619, 621 (7th Cir.1995). In the instant case, considering all facts in the light most favorable to the non-movants, there are no genuine issues of material fact which would allow this case to withstand summary judgment.

### A. *K & A as a Party*

As a preliminary matter, State Oil contends that K & A is not a proper plaintiff in this action because the Complaint alleges a contractual relationship only between Khan and State Oil. The PMPA offers protections only to a "franchisee," which is defined as "a retailer or a distributor ... who is authorized ... under a franchise ... to use a trademark in connection with the sale ... or distribution of motor fuel." 15 U.S.C. § 2801(4). The PMPA defines a "franchise" only in terms of a contractual relationship. 15 U.S.C. § 2801(1)(B). Khan was the only "retailer or distributor" in a contractual relationship with State Oil. Because K & A was not engaged in a contractual relationship with State Oil, it is not a protected "franchisee" under the PMPA. Thus, it is not a proper plaintiff under Count I of the Complaint.

Count II of the Complaint alleges a violation of antitrust law. State Oil contends that K & A does not have standing to bring this count because there was no contractual relationship between State Oil and K & A. Because antitrust law is designed to prevent many types of injuries, rather than simply contractual injury, courts should generally focus on antitrust injury requirements, rather than traditional contractual standing requirements, when deciding antitrust cases. *See Southwest Suburban Bd. of Realtors v. Beverly Area Planning Assoc.,* 830 F.2d 1374, 1377 n. 1 (7th Cir.1987). Because K & A may have been in a position to suffer potential antitrust injury, the court will not dismiss K & A's Count II, and will consider that count as it applies to both Khan and K & A.

■ Count IV alleges a state law contract claim. Again, because State Oil incurred no contractual duties to K & A under the facts presented, K & A does not have standing to bring this contractual claim against State Oil. *See White Hen Pantry, Inc. v. Cha*, 214 Ill.App.3d 627, 158 Ill.Dec. 310, 574 N.E.2d 104 (1991).

In sum, K & A does not have standing to bring Counts I and IV. As such, the court considers Counts I and IV as if they were brought by Khan individually.

### B. *Petroleum Marketing Practices Act*

Khan alleges that State Oil violated the PMPA by its defective January 27, 1993, notice of intent to terminate the Agreement and by its action to appoint the receiver.[1] The court need not decide whether the January 27 notice was faulty for purposes of this order.[2]

■ The PMPA provides franchisees the right to pursue equitable and legal actions against franchisors who fail to comply with the PMPA's notice provisions in terminating franchisees. 15 U.S.C. § 2805. The preliminary issue in a PMPA wrongful termination action is whether there was a termination. This issue arises from the requirement that a court's jurisdiction be secured by a justiciable case or controversy. *Naso v. Sun Ref. & Mktg. Co.*, 582 F.Supp. 1566 (N.D.Ohio 1983) (citing *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945)). The PMPA vests jurisdiction in federal district courts over matters involving the violation of 15 U.S.C. § 2802(a), which states:

> [N]o franchisor engaged in the sale ... or distribution of motor fuel in commerce may—(1) terminate any franchise ... prior to the conclusion of the term, or the expiration date, stated in the franchise; or ... (2) fail to renew any franchise relationship.

15 U.S.C. § 2802(a).

■ Khan alleges that the appointment of the receiver was a termination by State Oil pursuant to the January 27 notice. This court has already determined, in its minute order of September 11, 1995, that it will not construe the appointment of a receiver by the state court as a termination by State Oil under the PMPA.[3] The appointment was an

---

1. Citing *Winks v. Feeney Oil Co.*, 731 F.Supp. 322, 327 (C.D.Ill.1990), Khan asserts that State Oil has already conceded that its first notice was defective by issuing the second notice. The court respectfully disagrees with the *Winks* court. The court will not imply that a franchisor concedes a defective first notice when it issues a complying second notice. By punishing the issuance of a correct notice, the incentive for franchisors to correct possibly defective notices would be removed.

2. Khan's response to State Oil's motion states: In the action before Judge Norgle prior to its remand, State Oil moved for summary judgment, which was denied by Order dated May 12, 1993. Judge Norgle found that the January 27, 1993 Notice of Termination ... was not reasonable nor justified under the circumstances.
 (Pls.' Mem. In Opp'n to Summ.J. at 4.) Khan seems to ignore the court's later opinion and order remanding the case to the Circuit Court of DuPage County, which explains:
 [T]he court has *not* already made a finding that State Oil's original notice of termination was defective or unreasonable. The court in its May 12, 1993 minute order on State Oil's motion for summary judgment found only that State Oil failed to convince the court that providing ninety-days notice would not have been reasonable as a matter of law. The court did not conclude the opposite: that ninety-days notice would not have been unreasonable, or that the five-day notice was itself unreasonable. That issue may thus be revisited.
 *State Oil v. Kahn*, 839 F.Supp. 543, 544 n. 1 (N.D.Ill.1993) (Norgle, J.) (emphasis added).

3. In part, the court's order states as follows: As a matter of law, the mere appointment of a receiver by the Circuit Court for the 18th Judicial Circuit did not constitute a termination of the contract between the parties. Generally, appointment of a receiver does not determine the rights of the parties. Rather, a receiver acts as an officer of the court, managing the property for the benefit of both parties. *First Nat'l Bank of Vandalia v. Trail Ridge Farm*, 143 Ill.App.3d 244, 251 [97 Ill.Dec. 371, 492 N.E.2d 1030] (5th Dist.1986); *see also People ex rel. Scott v. Pintozzi*, 50 Ill.2d 115 [277 N.E.2d 844] (1971); *In re Marriage of Pick*, 167 Ill.App.3d 294, 299 [118 Ill.Dec. 53, 521 N.E.2d 121] (2d Dist.1988) (purpose of receivership is to prevent injury and avoid injustice).
 The decision to appoint a receiver lies within the discretion of the court. *Asset Guar. Reinsurance Co. v. American Nat'l Bank & Trust Co. of Chicago* [254 Ill.App.3d 713, 194 Ill.Dec. 63], 627 N.E.2d 179 (Ill.App. 1st Dist.1993). State Oil's mere petition for a receiver could not have served as a termination of the agreement. Rather, it was the court's discretionary

action of the state court, rather than an action of State Oil. As such, that appointment cannot be viewed as a termination by State Oil flowing from its arguably-defective January 27 notice. Khan has not alleged any other act which could constitute a termination by State Oil in violation of the PMPA. Khan's failure to meet this jurisdictional requirement raises a serious doubt about the existence of a justiciable case or controversy. *See Halder v. Standard Oil Co.,* 642 F.2d 107 (5th Cir.1981) (franchisee's fear of termination did not confer jurisdiction on the district court).

■ Alternatively, Khan argues that he did not need to wait for State Oil to actually terminate his franchise before bringing a PMPA action against State Oil. Khan cites several cases where franchisees brought actions based on defective notices prior to actual termination. *See, e.g., Winks v. Feeney Oil Co., Inc.,* 731 F.Supp. 322 (C.D.Ill.1990); *Thompson v. Kerr–McGee Refining Corp.,* 660 F.2d 1380 (10th Cir.1981). However, these cases involve franchisees who were, unlike Khan, seeking injunctions against termination.

Nevertheless, Khan's argument is that the January 27 notice alone is enough to entitle him to damages. He contends that courts must not allow franchisors, like State Oil, to escape liability for harm caused by defective notices by later withdrawing those notices. Khan cites no authority for this proposition.

Furthermore, Khan does not allege that he was harmed by the January 27 notice. He alleges none of the injuries which PMPA plaintiffs in other cases have alleged. For

example, as discussed above, he cannot claim that an actual termination resulted from that notice. Also, because he did not bring a claim for injunctive relief, he cannot claim attorneys fees for seeking an injunction like the plaintiffs in *Winks* and *Lyons v. Mobil Oil Corp.,* 554 F.Supp. 199 (D.Conn.1982). He does not claim resulting lost profits like the plaintiff in *Lippo v. Mobil Oil Corp.,* 776 F.2d 706 (7th Cir.1985). Indeed, Khan claims in Count II that the receiver increased revenue and profits while operating Khan's franchise after the time of the defective notice.

■ In essence, Khan's argument amounts to an assertion that the issuance of any defective notice is a *per se* violation of the PMPA entitling a franchisee to trial and damages. Neither case law nor the PMPA recognize a *per se* violation of the PMPA by franchisors entitling franchisees to recovery. This court is unwilling to create such a violation of the PMPA based on allegations of a defective notice. A mere defective notice, without more, does not form a sufficient basis for an action under the PMPA.[4] Even viewing the facts in the light most favorable to Khan, there is no genuine issue of material fact which would allow Count I (PMPA) to survive summary judgment.

## C. Antitrust

■ Both sides have moved for summary judgment on Count II.[5] Plaintiffs state that the pricing provisions in the Agreement (set forth above) constituted vertical price-fixing, in that the Agreement prohibited

decision that placed Plaintiff's property in receivership. The court's appointment of a receiver was not a termination of the franchise agreement by State Oil.
September 11, 1995 (Doc. # 72).

4. The PMPA specifically provides that the court, rather than a jury, shall determine whether exemplary damages or attorney fees should be awarded. 15 U.S.C. § 2805(d)(2)–(3). No case or statute recognizes a mere defective notice, without alleged injury, as a violation entitling a plaintiff to fees or exemplary damages. Accordingly, Khan has set forth no facts which could give rise to such an award.

5. As a precursor to its antitrust discussion, the court notes the ambiguity of much of the current antitrust case law:
> [T]he courts ... [have] ... spawned an enormous body of interpretations and judgments without great uniformity or consistency. Almost any term in a contract that was alleged in one decision to be ... "anticompetitive," and thus illegal, has been found in another decision to be legal.

Armen A. Alchian & William R. Allen, *Exchange and Production: Competition, Coordination & Control* 272 (3d ed. 1983). The standards of summary judgment loom heavily in the face of this ambiguity. The court acknowledges the challenge of demonstrating a genuine issue of material fact under such circumstances.

Plaintiffs from increasing income by raising or lowering State Oil's recommended retail price.[6] Plaintiffs claim that, absent the Agreement's price constraints, Plaintiffs could have increased income by raising the price of premium grade gasoline and lowering the price of regular grades.

As proof of these assertions, Plaintiffs offer the report of Gustavo E. Bamberger ("Bamberger"). Plaintiffs aver that the receiver did not follow State Oil's recommended retail price and, therefore, that the receiver increased sales of gasoline. Plaintiffs also state that increased sales of gasoline would have resulted in a similar increase in ancillary sales.

In response, State Oil states that competition, rather than State Oil, prevented Plaintiffs from raising prices. State Oil notes that Plaintiffs were free to set any price they wished for the gasoline, although profits would be affected by setting a price different from the recommended price. State Oil also argues that Plaintiffs and their expert are merely speculating about the receiver's pricing method and success, and that any success that the receiver may have had is not an indicator that Plaintiffs could have performed similarly. In addition, State Oil asserts that Plaintiffs' reasoning regarding the relationship between ancillary sales and gasoline sales is faulty.

Plaintiffs respond that State Oil's recommended prices were not competitive. Plaintiffs draw this conclusion from a series of documented phone calls, in which Khan called-in the pump prices of his competitors. For each of these phone calls, Khan's recommended prices were higher than his competition's. In response, State Oil claims that Khan only called-in prices when he wished to request a wholesale price-reduction, and that Khan's documented prices are not generally representative of the relationship between Khan's prices and those of his competition.

■ Section One of the Sherman Act bans "[e]very contract ... in restraint of trade or commerce." 15 U.S.C. § 1. Section One determinations proceed under one of two methods: "per se" or "rule of reason" analysis. The court already ruled, on September 12, 1995 (Doc. # 73), that the alleged violation must be considered under "rule of reason," and not "per se," analysis. That is, the court will weigh all circumstances of the case when determining whether the pricing provision is illegal for imposing an unreasonable restraint on trade. *See Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977).[7]

■ To have standing in federal court pursuant to Article III of the Constitution, plaintiffs must demonstrate the existence of a case or controversy. *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1296 (7th Cir. 1993). In the antitrust context, a core component of the case or controversy demonstration is the requirement of an antitrust injury. *Serfecz v. Jewel Food Stores*, 67 F.3d 591 (7th Cir.1995). An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and ... [an injury flowing] ... from that which makes defendants' acts unlawful." *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1419 (7th Cir.1989) (quoting *NCAA v. Bd. of Regents for the Univ. of Okla.*, 468 U.S. 85, 103, 104 S.Ct. 2948, 2961, 82 L.Ed.2d 70 (1984)). The alleged injury must be palpable and distinct, rather than abstract, conjectural, or hypothetical. *Slowiak*, 987 F.2d at 1296. In considering the injury requirements of § 1 antitrust cases, although the court must draw all inferences from the underlying facts in the light most favorable to the non-movants, "antitrust law limits the range of permissible inferences from ambiguous evidence in a [§] 1 case." *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 660 (7th Cir. 1987) (quoting *Matsushita Elec. Industrial*

---

6. Vertical price-fixing involves an agreement to set retail prices between a retailer and a wholesaler, as opposed to an agreement between two wholesalers or two retailers (horizontal price-fixing). *See Black's Law Dictionary* 1400 (5th ed. 1979).

7. Under the "per se" analysis, a violative provision is one which makes "the likelihood of anticompetitive conduct so great as to render unjustified further examination of the alleged conduct." *Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 724, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808 (1988) (citation omitted).

**1210**

*Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986)).

 It is well-established that, in order to prove an agreement in restraint of trade, a plaintiff must show that the defendant's conduct actually had an adverse effect on all of competition in a relevant market. *Bunker Ramo Corp. v. United Bus. Forms, Inc.,* 713 F.2d 1272, 1283 (7th Cir.1983). Proof of harm to single competitor is insufficient. *Oksanen v. Page Mem. Hosp.,* 945 F.2d 696, 708 (4th Cir.1991).

 The plaintiff has the burden of demonstrating the relevant geographic market. *Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.,* No. 93 C 5578, 1995 WL 529601, at *31 (N.D.Ill. Aug. 8, 1995). That market is the geographic area in which a buyer may practically proceed to other sellers for goods or services, should the defendant seller seek to raise its prices. *Cogan v. Harford Mem. Hosp.,* 843 F.Supp. 1013 (D.Md.1994).

 Furthermore, Rule of Reason analysis includes the general requirement that antitrust plaintiffs establish that the defendants had market power. *Valley Liquors,* 822 F.2d at 665 (7th Cir.1987). That is, there must be a showing that defendants possessed the "power to raise prices significantly above the competitive level without losing all of one's business." *Id.*

 Plaintiffs cannot meet their burden of showing an antitrust injury simply by alleging that they could have made more money by pricing products differently than they chose to. *See Slowiak,* 987 F.2d at 1297–98. Instead, they must make some showing that the pricing provision caused them to lose money by forcing them to set prices which were artificial. *Slowiak* 987 F.2d at 1297.

 Courts must not trivialize the power of the Sherman Act by bestowing an aura of federal antitrust significance upon minor business disputes. Before receiving antitrust relief, plaintiffs must meet their burden of demonstrating the applicability of antitrust law to their dispute. Plaintiffs here have failed to demonstrate antitrust injury, harm to competition, a relevant market for analysis and market power. Accordingly, as a matter of law, Plaintiffs' allegations do not command the forces of the Sherman Act.

Plaintiffs have not even shown that they could prove that a difference in pricing would have increased their sales. Plaintiffs present the court with Bamberger's report as support for their allegations that the pricing provisions of the Agreement caused the loss of the Station. Bamberger concludes that Plaintiffs would have increased their gross dollar margin if they had not followed State Oil's recommended retail price. He bases this conclusion on the undocumented assumption that the receiver did not follow the pricing provisions of the Agreement. State Oil denies that assumption. Bamberger states that the receiver showed an increase in profits and sales, which State Oil also denies. Bamberger's report also relies on a series of mathematical equations which rest on undocumented factual assumptions.

In addition, in drawing his conclusions, Bamberger notes, "The difference in . . . sales also may reflect, in part, changes in general economic conditions," although Bamberger states that he was able to isolate the effects of such changes from his calculations. (Rept. of Gustavo E. Bamberger at 3.) He states that he isolated these effects by "assuming that absent the change in pricing policy, gallon sales at Plaintiffs' former location would have changed by the same percentage amount as total gasoline sales" in all of DuPage County. [Rept. of Gustavo E. Bamberger at 4.] Bamberger's report makes no mention of why DuPage County is a relevant market for the analysis of Plaintiff's potential sales.

Moreover, Bamberger's report works on the unstated and unexplained assumption that five-months of the receiver's experience at a single station is a legitimate basis for analyzing Plaintiffs' experience at the same station prior to the receiver's appointment. He assumes that the receiver operated the Station in the same manner and competitive conditions as Plaintiffs. As an example of how the receiver operated the Station in the same manner as Plaintiffs, Bamberger mentions only that the receiver and Plaintiffs followed the same hours of operation.

In an antitrust trial, the court would not admit Bamberger's report as evidence of antitrust injury. The report turns entirely on the experience of one receiver who operated one gas station over a five-month period which occurred after the alleged antitrust violation. The court would expect an expert to also consider trustworthy data reflecting the experience of other, similarly situated stations in a demonstrably relevant market. Bamberger has not done so.

From the assumption that the receiver made money while not following the pricing provisions, Bamberger draws the conclusion that Plaintiffs lost money while following the pricing provisions because of those provisions. The receiver's experience is not a sufficient basis for proving antitrust damages simply because the receiver's experience followed Plaintiffs'. *See Isaksen v. Vermont Castings, Inc.,* 825 F.2d 1158, 1165 (7th Cir. 1987) (when antitrust plaintiff attempted to prove lost profits by comparing profits for years before and after alleged unlawful activity, the court explained that *post hoc ergo propter hoc* is an invalid methodology for calculating damages, especially where other causal factors may have been at work); *See also Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F.2d 410, 415 (7th Cir.1992).

██ Furthermore, antitrust plaintiffs have the burden of showing a violation by a party with market power, *Valley Liquors,* 822 F.2d at 665, and that the violation had a negative effect on competition in the entire relevant market, not just to an individual competitor. *Tunis Bros. Co. Inc. v. Ford Motor Corp.,* 952 F.2d 715 (3d Cir.1991); *see also GTE Sylvania,* 433 U.S. at 52, 97 S.Ct. at 2558. To hold otherwise would transform ordinary business disputes into antitrust claims. *See Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins., Inc.,* 784 F.2d 1325, 1338 (7th Cir.1986). In the instant case, Plaintiffs have not even attempted to demonstrate that State Oil had market power, or to demonstrate the effect of the pricing provisions on competition in a relevant market. Plaintiffs have, at most, shown a contractual injury to single competitor in an undefined market.

Bamberger's report does not even demonstrate that Plaintiffs would not have suffered but for the alleged antitrust violation, much less that the injury was of the sort of harm that antitrust laws were intended to prohibit. *See Jack Walters & Sons Corp. v. Morton Bldg., Inc.,* 737 F.2d 698, 707 (7th Cir.1984) (holding that, even if a manufacturer engaged in price-fixing, its dealer, alleging only its own lost sales, could not bring an action for antitrust damages because antitrust laws were intended to prohibit damage to market competition rather than in individual business relationships). Thus, Plaintiffs have not submitted evidence of an antitrust injury.

Accordingly, Plaintiffs fail to meet the standing requirements of the Sherman Act and lack antitrust standing. As a matter of law, considering all facts in favor of Plaintiffs, there is no genuine issue of material fact for trial.

### D. *State Law Contract*

██ Finally, Khan argues that State Oil breached a covenant of good faith and fair dealing, which arose from the Agreement, because Khan was unable to change gasoline prices at will while State Oil did not set its prices fairly to allow Khan to make a profit. Khan states that State Oil's wholesale gasoline prices were not competitive, in violation of the covenant of good faith.

For purposes of this motion, State Oil concedes that it did have an obligation under the Agreement to set a competitive recommended pump price. Therefore, State Oil agrees with Khan that State Oil would be in violation of that obligation if it set a recommended pump price (which was linked to the wholesale price) which was too high to be competitive. However, State Oil notes that, a low, and thus competitive, recommended pump price (linked to a low wholesale price) would not be in violation of its obligation. The court agrees. *See Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 339, 110 S.Ct. 1884, 1891, 109 L.Ed.2d 333 (low, non-predatory, prices are not anti-competitive). Khan can therefore only recover for breach of the covenant if he can present facts indicating that State's prices were too high to be competitive.

State Oil argues that Khan has presented no such facts. State Oil asserts that Bam-

berger's report consists of mere speculation, without supporting economic analysis.

Khan asserts that he need not establish that State Oil's prices were too high. Rather, he believes that he need only prove that State Oil breached its covenant of good faith. According to Khan,

> [The breach] ... is amply shown by the fact that the Agreement itself is *per se* illegal under ... the Sherman Act. The Agreement was thus void *ab initio*, and it necessarily follows that State Oil, by drafting, entering into, and enforcing the illegal pricing provisions, breached its covenant of good faith to Khan.

(Pls.' Mem.' in Opp. to Summ.J. at 20.) In sum, Khan argues that State Oil is liable for a breach of a void, unenforceable covenant.

In addition to this circular argument, Khan proceeds to defend Bamberger's report, arguing that it does demonstrate the anti-competitive nature of State's Oil's pricing scheme. As discussed above, the court finds that the report rests on undocumented and unexplained assumptions which fail to demonstrate any anti-competitive injury. Consequently, Khan has offered no facts to support his legal conclusion that State Oil set its prices at anti-competitive levels. Khan has raised no genuine issue of material fact as to a breach of a covenant of good faith and fair dealing.

### III. *CONCLUSION*

Accordingly, Defendant's motion for summary judgment is granted as to Counts I, II, and IV and Plaintiff's motion for summary judgment as to Count II is denied. Defendant's motion to strike the expert report, its motion to bar, and its motion in limine are denied as moot.

IT IS SO ORDERED.